STATE of Minnesota, Respondent,

v.

Dylan Arber NEWMAN, Appellant.

No. C6–95–427.

Court of Appeals of Minnesota.

Oct. 3, 1995.

Review Denied Nov. 30, 1995.

Hubert H. Humphrey, III, Minnesota Attorney General, Robert A. Stanich, Assistant Attorney General, St. Paul, Alan L. Mitchell, St. Louis County Attorney, Duluth, MN, for respondent State of Minnesota.

John M. Stuart, Minnesota State Public Defender, Michael A. Herold, Special Assistant State Public Defender, Minneapolis, MN, for appellant Dylan Arber Newman.

Considered and decided by RANDALL, P.J., and DAVIES and HOLTAN,* JJ.

## OPINION

HARVEY A. HOLTAN, Judge.

Appellant challenges his conviction of a felony drive-by shooting, arguing that the BB gun he shot at another vehicle is not a firearm within the meaning of Minn.Stat. § 609.66, subd. 1e(a) (Supp.1993). We affirm.

## FACTS

Appellant Dylan Arber Newman was charged with violating the drive-by shooting statute after admitting he shot his BB gun at a Ford on the highway. The driver of the Ford immediately reported the incident to the officer who had stopped appellant's vehicle for a speeding violation. When the officer asked appellant (a passenger) if he had engaged in the shooting, appellant admitted his conduct and showed the officer the gun in the back seat. The officer found a Crossman 760 Pump Master, .177 caliber pellet BB

---

* Retired Judge of the District Court, serving as judge of the Minnesota Court of Appeals by ap- pointment pursuant to Minn. Const. art. VI, § 10.

repeater. Appellant said he fired the gun at the Ford because he was bored.

At the omnibus hearing, appellant moved to dismiss the charges for lack of probable cause, asserting that the BB gun was not a firearm under the felony drive-by shooting statute. The court denied the motion and ruled that the BB gun was a firearm within the meaning of that statute, Minn.Stat. § 609.66, subd. 1e(a) (Supp.1993).

After a trial on stipulated facts, the court found appellant guilty as charged. The court stayed imposition of sentence, placed appellant on three years supervised probation, and ordered him to pay a $3,000 fine and $285 in restitution to the victim.

## ISSUE

Did the trial court err when it determined that a BB gun is a firearm under the felony drive-by shooting statute?

## ANALYSIS

■ Appellant challenges the district court's interpretation of Minn.Stat. § 690.66, subd. 1e(a) (Supp.1993). Statutory interpretation is a question of law that this court reviews de novo. *Sorenson v. St. Paul Ramsey Medical Ctr.,* 457 N.W.2d 188, 190 (Minn. 1990). This case raises an issue of first impression: whether a BB gun is a firearm within the meaning of the drive-by shooting statute, Minn.Stat. § 609.66, subd. 1e(a). That statute provides:

> Whoever, while in or having just exited from a motor vehicle, recklessly discharges a firearm at or toward a person, another motor vehicle, or a building is guilty of a felony * * *.

*Id.* As a fundamental rule of statutory interpretation, this court should "look first to the specific statutory language and be guided by its natural and most obvious meaning."

*Heaslip v. Freeman,* 511 N.W.2d 21, 22 (Minn.App.1994), *review denied* (Minn. Feb. 24, 1994); *see also* Minn.Stat. § 645.16 (1992) (when words of statute are clear and free from ambiguity, court shall not disregard the letter of the law).

■ Section 609.66 is entitled "Dangerous Weapons," but does not define that term or the term "firearm" as used in that section. In fact, at the time of the offense, the criminal code did not contain anywhere a definition for the term "firearm" (although a definition was subsequently added for a single section).[1] The criminal code defines a BB gun as "a device that fires or ejects a shot measuring .18 of an inch or less in diameter." Minn.Stat. § 609.66, subd. 1d(c)(1) (Supp. 1995). Section 609.66 now contains a cross-reference to the game and fish laws located in Minn.Stat. ch. 97A. That chapter defines the term "firearm" as "a gun that discharges shot or a projectile by means of an explosive, a gas, or compressed air." Minn.Stat. § 97A.015, subd. 19 (1992). Thus, under the game and fish laws' definition, a BB gun is a "firearm."

We can rely on that definition only if it does not conflict with the criminal statute, Minn.Stat. § 609.66. *See* Minn.Stat. § 97A.021, subd. 1 (1992) ("provision of the game and fish laws that is inconsistent with the code of criminal procedure or of penal law is only effective under the game and fish laws"). We see no inconsistency here, because section 609.66 contains no definition of "firearm."

This case is not the first time an appellate court has relied upon section 97A.015's definition of firearm in a criminal appeal. *See State v. Seifert,* 256 N.W.2d 87, 88 (Minn. 1977) (court relied on game and fish laws' definition when determining that BB gun used in aggravated robbery was dangerous weapon). Seifert had used a Crossman .177–

---

1. The Minnesota Legislature has recently enacted a new section, entitled "Civil Disorder," which prohibits training others or demonstrating to others "how to use or make any firearm, or explosive or incendiary device capable of causing injury or death." 1995 Minn.Laws ch. 244, § 23 (setting forth Minn.Stat. § 609.669, subd. 1). The legislature defines the term "firearm," for purposes of this new section only, as

any weapon which is designed to or may readily be converted to expel any projectile by the action of an explosive; or the frame or receiver of any such weapon.

*Id.* (setting forth Minn.Stat. § 609.669, subd. 2(2)). This statute took effect August 1, 1995 and applies to crimes committed on or after that date. 1995 Minn.Laws ch. 244, § 43.

caliber CO 2 BB pistol, similar to appellant's weapon, at the time of the offense. The supreme court rejected Seifert's attempt to distinguish his BB gun from other firearms, saying:

> In our opinion, the fact that the gun defendant used required gas rather than gunpowder to discharge its projectile does not mean, as defendant contends, that the gun could not be a firearm within the meaning of *the term "firearm" used in § 609.02.* Having statutory purpose in mind, we think that term *should be defined broadly to include guns using newer types of projectile propellants and should not be restricted in meaning to guns using gunpowder.* In this respect we note that § 97.40, subd. 34 [now Minn.Stat. § 97A.015, subd. 19], defines "firearms" for purposes of game and fish laws as "any gun from which shot or a projectile is discharged by means of an explosive, gas, or compressed air." The gun used by defendant might also qualify as a dangerous weapon under the alternative test contained in § 609.02 ("any device designed as a weapon and capable of producing death or great bodily harm").

*Id.* (emphasis added).

■ Even after the supreme court ruled that a BB gun could be a firearm under the aggravated robbery and mandatory minimum sentence statutes, the legislature has reenacted the criminal statutes without giving "firearm" another definition and, thus, has presumptively adopted the supreme court's definition. *See* Minn.Stat. § 645.17(4) (1992) (when a court of last resort has interpreted a statute, the legislature in subsequent laws on the same subject matter intends the same interpretation to be used); *Western Union Tel. Co. v. Spaeth,* 232 Minn. 128, 132, 44 N.W.2d 440, 442 (1950) ("reenactment of a statute without change, after construction * * * by the court, presumptively constitutes an adoption of such construction").

We note further that, from a public policy standpoint, especially when dealing with crimes against persons, it probably would not matter to the victim of a drive-by shooting whether the weapon used in the attack was powered by air or by an explosive. Under most circumstances, the physical or psychological harm will be the same.

Given the supreme court's willingness to rely on the game and fish laws' definition of "firearm," and because section 609.66 is not inconsistent with that definition, we conclude that the definition in section 97A.015 is adequate for purposes of the drive-by shooting statute, Minn.Stat. § 609.66, subd. 1e(a).

## DECISION

The trial court properly concluded that a BB gun is a firearm within the meaning of Minn.Stat. § 609.66, subd. 1e(a). Appellant's conviction must stand.

**Affirmed.**

DAVIES, Judge (dissenting).

I respectfully dissent.

Dylan Arber Newman was convicted of violating the drive-by shooting statute, which requires use of a "firearm" (not a "dangerous weapon"):

> Whoever, while in or having just exited from a motor vehicle, recklessly discharges a *firearm* at or toward a person, another motor vehicle, or a building is guilty of a felony * * *.

Minn.Stat. § 609.66, subd. 1e(a) (Supp.1993) (emphasis added).

In the American Heritage Dictionary, 684 (3d ed. 1992), a "firearm" is defined as

> [a] weapon, especially a pistol or rifle, capable of firing a projectile and **using an explosive charge as a propellant.**

(Emphasis added.) That definition excludes guns that use compressed air or gas, not explosive powder, as the propellant. The weapon here is a compressed gas gun, a "glorified" BB gun.

The majority cites *State v. Seifert,* 256 N.W.2d 87, 88 (Minn.1977), to support its decision. The issue in *Seifert,* though, was not whether a BB gun is a "firearm," but whether it could be considered a "dangerous weapon" for purposes of the aggravated rob-

bery statute, Minn.Stat. § 609.245 (1974). *Id.* at 88. A "dangerous weapon" was defined at the time as

> any firearm, * * * or any device designed as a weapon and capable of producing death or great bodily harm, or any other device or instrumentality which, in the manner it is used or intended to be used, is calculated or likely to produce death or great bodily harm.

Minn.Stat. 609.02, subd. 6 (1974).[1] As the supreme court noted in *Seifert,* under this definition a BB gun "might also qualify" even if it is not a firearm. *Id.* Indeed, *Seifert* further stated that the aggravated robbery conviction could be affirmed "[i]n any event" because the defendant had admitted at a change-of-plea hearing that he believed his accomplice had used a (real) firearm. *Id.* In short, contrary to the majority's suggestion, *Seifert* does not so clearly hold that a BB gun is a firearm.

I have no trouble with the proposition that a BB gun is a "dangerous weapon" for all of Minn.Stat. ch. 609, our criminal code. But I cannot hold that a BB gun is a "firearm" so as to bring one under the drive-by shooting statute. Criminal statutes are to be interpreted strictly against the state. *State v. Soto,* 378 N.W.2d 625, 627–28 (Minn.1985). Therefore, the definition of firearm must—in this criminal prosecution—be read literally.

The conviction should be reversed.

---

**1.** The 1993 version of this provision, applicable here, is nearly identical' simply adding "combustible or flammable liquid[s]" as "dangerous weapons." Minn.Stat. § 609.02, subd. 6 (Supp. 1993).