# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A14-1792

State of Minnesota,
Respondent,

vs.

David Lee Haywood,
Appellant.

**Filed September 28, 2015**
**Affirmed**
**Larkin, Judge**

Ramsey County District Court
File No. 62-CR-13-84

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Thomas R. Ragatz, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Grant Gibeau, Special Assistant Public Defender, Gregg M. Corwin & Associate, P.C., St. Louis Park, Minnesota; and

Tara Reese Duginske, Special Assistant Public Defender, Briggs and Morgan, P.A., Minneapolis, Minnesota (for appellant)

Considered and decided by Larkin, Presiding Judge; Chutich, Judge; and Smith, Judge.

## S Y L L A B U S

A BB gun is a firearm within the meaning of prohibited possession of a firearm under Minn. Stat. § 609.165, subd. 1b(a) (2012).

**O P I N I O N**

**LARKIN**, Judge

Appellant challenges his conviction of possessing a firearm as an ineligible person under Minn. Stat. § 609.165, subd. 1b(a), arguing that a BB gun is not a "firearm" within the meaning of the statute and that the statute is unconstitutionally vague. Because a BB gun is a "firearm" within the meaning of section 609.165, subd. 1b(a), and because the term "firearm" has developed a reasonably definite meaning under caselaw, we affirm.

**FACTS**

Respondent State of Minnesota charged appellant David Lee Haywood with possessing a firearm as an ineligible person under Minn. Stat. § 609.165, subd. 1b(a). The complaint alleged that Haywood possessed a Walther CP99 Compact .177-caliber BB gun and that Haywood was ineligible to possess a firearm based on his 2005 conviction of controlled-substance crime in the second degree. The record indicates that the BB gun looks like a miniature version of a standard Walther P99. The record also indicates that the BB gun has an effective range of approximately 350 yards and a substantial muzzle velocity.

Haywood moved to dismiss the charge, arguing that the BB gun is not a firearm for the purpose of section 609.165, subdivision 1b(a), and that section 609.165, subdivision 1b(a), is unconstitutionally vague. The district court denied Haywood's motion, and the case was tried to a jury. At trial, the district court instructed the jury that "[a] BB gun is a firearm under Minnesota law." The jury found Haywood guilty, and the

2

district court sentenced Haywood to serve 60 months in prison. Haywood appeals his conviction.

## ISSUES

I.      Is a BB gun a "firearm" within the meaning of Minn. Stat. § 609.165, subd. 1b(a)?

II.     Is Minn. Stat. § 609.165, subd. 1b(a), unconstitutionally vague?

## ANALYSIS

### I.

The primary issue raised in this appeal is whether a BB gun is a firearm within the meaning of Minn. Stat. § 609.165, subd. 1b(a), which provides:

> Any person who has been convicted of a crime of violence, as defined in section 624.712, subdivision 5, and who ships, transports, possesses, or receives a firearm, commits a felony and may be sentenced to imprisonment for not more than 15 years or to payment of a fine of not more than $30,000, or both.

The term "firearm" is not defined in section 609.165. *See* Minn. Stat. § 609.165 (2012).

Haywood argues that the district court erroneously concluded that the BB gun in this case qualifies as a firearm under the statute and that the district court therefore erred by denying his motion to dismiss and by instructing the jury that a BB gun is a firearm under Minnesota law. Haywood's argument raises an issue of statutory interpretation. "The objective of statutory interpretation is to ascertain and effectuate the Legislature's intent. If the Legislature's intent is clear from the statute's plain and unambiguous language, then [a court] interpret[s] the statute according to its plain meaning without resorting to the canons of statutory construction." *State v. Rick*, 835 N.W.2d 478, 482

3

(Minn. 2013) (citation omitted). An appellate court reviews statutory-interpretation issues de novo. *Id*.

"In the absence of a statutory definition, we generally turn to the plain, ordinary meaning of a statutory phrase." *State v. Leathers*, 799 N.W.2d 606, 609 (Minn. 2011). When determining the plain and ordinary meaning of an undefined term, appellate courts sometimes rely on dictionary definitions. *See A.A.A. v. Minn. Dep't of Human Servs.*, 832 N.W.2d 816, 821 (Minn. 2013) (examining dictionary definitions to define "mobility" as used in Minn. Stat. § 256B.0659, subd. 2(b)(6) (2012)). Haywood argues that "[t]he dictionary definition as well as the plain and common usage of 'firearm' demonstrates that Minn. Stat. § 609.165 is unambiguous." He relies on dictionary definitions of firearm, including: "a weapon from which a shot is discharged by gunpowder," *Merriam-Webster's Collegiate Dictionary* 471 (11th ed. 2003); a "weapon that expels a projectile (such as a bullet or pellets) by the combustion of gunpowder or other explosive," *Black's Law Dictionary* 710 (9th ed. 2009); "a small arms weapon, as a rifle or pistol, from which a projectile is fired by gun-powder," *Random House Unabridged Dictionary* 722 (2d ed. 2005); and a "weapon, especially a pistol or rifle, capable of firing a projectile and using an explosive charge as a propellant," *The American Heritage Dictionary* 661 (5th ed. 2011). Haywood notes that the sample dictionary definitions "require a weapon to utilize explosive force to be considered a firearm" and argues that the BB gun in this case "cannot reasonably be considered a firearm" because it does not utilize explosive force.

Haywood's argument might be persuasive if we were writing on a clean slate. However, Minnesota's appellate courts have consistently interpreted the term "firearm" as used within certain sections of chapter 609 to include BB guns. For example, in *State v. Seifert*, the defendant pleaded guilty to aggravated robbery while armed with a dangerous weapon under Minn. Stat. § 609.245 (1974) and was subject to a minimum sentence under Minn. Stat. § 609.11 (1974), which authorized imposition of a minimum sentence if a defendant "'had in his possession a firearm or used a dangerous weapon at the time of the offense.'" 256 N.W.2d 87, 87-88 (Minn. 1977) (quoting Minn. Stat. § 609.11). "Dangerous weapon" was defined to include "'any firearm.'" *Id.* at 88 (quoting Minn. Stat. § 609.02, subd. 6 (1974)). As support for his plea, the defendant admitted that he possessed "an unloaded Crossman .177-caliber CO 2 BB pistol at the time of the robbery." *Id.* On appeal, the defendant argued that the BB gun was not a firearm within the meaning of section 609.02, subdivision 6. *Id.* The supreme court rejected that argument, reasoning:

> In our opinion, the fact that the gun defendant used required gas rather than gunpowder to discharge its projectile does not mean, as defendant contends, that the gun could not be a firearm within the meaning of the term "firearm" used in [section] 609.02. Having statutory purpose in mind, we think that term should be defined broadly to include guns using newer types of projectile propellants and should not be restricted in meaning to guns using gunpowder. In this respect we note that [section] 97.40, subd. 34, defines "firearms" for purposes of game and fish laws as "any gun from which shot or a projectile is discharged by means of an explosive, gas, or compressed air."

*Id.* (quoting Minn. Stat. § 97.40, subd. 34 (1974)).

5

In *State v. Newman*, this court considered whether a BB gun is a firearm within the meaning of the drive-by-shooting statute, Minn. Stat. § 609.66, subd. 1e(a) (Supp. 1993). 538 N.W.2d 476, 477 (Minn. App. 1995), *review denied* (Minn. Nov. 30, 1995). Section 609.66 did not define the term "firearm." *Id*. We treated the issue as one of statutory interpretation. *Id*. Like the Minnesota Supreme Court in *Seifert*, this court interpreted "firearm" to be consistent with the definition of firearm in the game-and-fish laws. *Id*. at 477-78 (adopting, for the purpose of the drive-by-shooting statute, the definition of "firearm" from section 97A.015, which states that "the term 'firearm' [is] 'a gun that discharges shot or a projectile by means of an explosive, a gas, or compressed air'" (quoting Minn. Stat. § 97A.015, subd. 19 (1992))). This court noted the supreme court's adoption, in *Seifert*, of the definition of firearm from the game-and-fish laws and reasoned:

> Even after the supreme court ruled that a BB gun could be a firearm under the aggravated robbery and mandatory minimum sentence statutes, the legislature has reenacted the criminal statutes without giving "firearm" another definition and, thus, has presumptively adopted the supreme court's definition. *See* Minn. Stat. § 645.17(4) (1992) (when a court of last resort has interpreted a statute, the legislature in subsequent laws on the same subject matter intends the same interpretation to be used); *W. Union Tel. Co. v. Spaeth*, 232 Minn. 128, 132, 44 N.W.2d 440, 442 (1950) ("reenactment of a statute without change, after construction . . . by the court, presumptively constitutes an adoption of such construction").

*Id*. at 478. This court therefore held that a BB gun is a firearm within the meaning of the drive-by-shooting statute. *Id*.

In *State v. Fleming*, this court considered whether a BB gun is a firearm within the meaning of Minn. Stat. § 624.713, subd. 1(b) (2004), which prohibited possession of a firearm by a person convicted of a crime of violence.[1] 724 N.W.2d 537, 538 (Minn. App. 2006). This court treated the issue as one of statutory interpretation. *Id*. at 539. Because the charging statute did not define the term "firearm," this court looked to "other sources" to define the term, specifically, the supreme court's decision in *Seifert*. *Id*. at 539-40. This court noted the supreme court's use of the definition of firearm from the game-and-fish laws in *Seifert* and that the legislature adopted the statutory language at issue in *Fleming* after the supreme court's decision in *Seifert*. *Id*. at 540. This court reasoned:

> We presume that the legislature acts with full knowledge of previous statutes and existing caselaw. *Pecinovsky v. AMCO Ins. Co.*, 613 N.W.2d 804, 809 (Minn. App. 2000), *review denied* (Minn. Sept. 26, 2000). And under our statutory cannons of construction, it is presumed that, when the Minnesota Supreme Court has construed the language of a law, the legislature in subsequent laws on the same subject matter intends the same construction to be placed upon such language. Minn. Stat. § 645.17(4) (2004). By choosing not to define "firearm" for purposes of section 624.713, the legislature presumptively adopted the Minnesota Supreme Court's definition.

*Id*. This court therefore held that a BB gun is a firearm within the meaning of section 624.713, subdivision 1, presuming "that the legislature acted with full knowledge of the then-existing caselaw applying the game-and-fish statutory definition of 'firearm.'" *Id*.

---

[1] The statute at issue in *Fleming* was subsequently renumbered as section 624.713, subdivision 1(2). The renumbering did not substantively alter the statute. *Compare* Minn. Stat. § 624.713, subd. 1(b) (2004), *with* Minn. Stat. § 624.713, subd. 1(2) (2012).

This court's decision in *Fleming* heavily influences our analysis because the possession offense in *Fleming* is substantively identical to the possession offense in this case. Fleming was convicted under section 624.713, subdivision 1(b), which prohibited possession of a firearm by "a person who has been convicted of . . . a crime of violence." Minn. Stat. § 624.713, subd. 1(b); *see* Minn. Stat. § 624.712, subd. 5 (2004) (defining "crime of violence"). Haywood was convicted under section 609.165, subdivision 1b(a), which prohibits possession of a firearm by "[a]ny person who has been convicted of a crime of violence, as defined in section 624.712, subdivision 5." In addition to prohibiting the same conduct, the possession statutes imposed identical penalties: "not more than 15 years or . . . payment of a fine of not more than $30,000, or both." Minn. Stat. § 609.165, subd. 1b(a); Minn. Stat. § 624.713, subd. 2(b) (2004). Lastly, a conviction and sentencing under section 609.165 bars conviction and sentencing under section 624.713, subdivision 2. Minn. Stat. § 609.165, subd. 1b(b) (2012). In sum, we view the two possession statutes as coextensive. *See Fleming*, 724 N.W.2d at 540 n.1 (suggesting legislative intent "that the two statutes are intended to be coextensive").

Haywood agrees that there is "substantially . . . no difference" between prohibited possession of a firearm under sections 624.713, subdivision 1(b), and 609.165, subdivision 1b(a). And he acknowledges that we cannot hold that a BB gun is not a firearm within the meaning of section 609.165, subdivision 1b(a), unless we overrule *Fleming*. Accordingly, Haywood argues that this court has "improperly extended *Seifert*'s holding past its intended bounds," that *Newman* and *Fleming* were incorrectly decided, and that this court therefore is not bound to follow those cases. *See Johnson v.*

8

*Chi., Burlington, & Quincy R.R. Co.*, 243 Minn. 58, 69-70, 66 N.W.2d 763, 771 (1954) (stating that the doctrine of stare decisis is a "guiding policy, not inflexible rule" and "is no shield for plain error"). We disagree. This court's approach to the legislature's declining to comprehensively define the term "firearm" under chapter 609 is consistent with *Seifert* and Minn. Stat. § 645.17(4) (2012), which provides that "when a court of last resort has construed the language of a law, the legislature in subsequent laws on the same subject matter intends the same construction to be placed upon such language."

We note that this court has encouraged the legislature to comprehensively define the term "firearm" under chapter 609. *See State v. Coauette*, 601 N.W.2d 443, 446 n.2 (Minn. App. 1999) ("Although courts can and have pieced together a definition of 'firearm' for use in the criminal code, this case, as have others, indicates the need for the legislature to craft a clarifying amendment to Minn. Stat. ch. 609, with a focus on whether the meaning of 'firearm' can be precisely understood in various sections of that chapter."), *review denied* (Minn. Dec. 14, 1999). We also note that the legislature has not amended section 609.165 to define "firearm" since our 2006 decision in *Fleming*. Because the legislature has not amended chapter 609 to provide a comprehensive definition of firearm that is narrower than the definition the supreme court adopted in *Seifert*, we presume that the legislature's inaction is with full knowledge and approval of existing caselaw applying the definition of firearm from the game-and-fish laws to certain sections of chapter 609. *See* Minn. Stat. § 645.17(4); *cf. Goodyear Tire & Rubber Co. v. Dynamic Air, Inc.*, 702 N.W.2d 237, 244 (Minn. 2005) ("In enacting statutes, we presume that the legislature acts with full knowledge of existing law."). Based on that

9

presumption, and on our interpretation of the term "firearm" in *Fleming*, we hold that a BB gun is a firearm within the meaning of prohibited possession of a firearm under Minn. Stat. § 609.165, subd. 1b(a).

In so holding, we reject Haywood's arguments that the legislature never intended a BB gun to be a firearm for the purpose of section 609.165, subdivision 1b(a). For example, Haywood notes that "firearm" is expressly defined in sections 609.666 and 609.669 in a way that excludes BB guns. *See* Minn. Stat. § 609.666, subd. 2 (2012) (negligent storage of firearms); Minn. Stat. § 609.666, subd. 1 (2012) (defining "firearm" as "a device designed to be used as a weapon, from which is expelled a projectile by the force of any explosion or force of combustion"); Minn. Stat. § 609.669, subd. 1 (2012) (civil disorder); Minn. Stat. § 609.669, subd. 2(2) (2012) (defining "firearm" as "any weapon which is designed to or may readily be converted to expel any projectile by the action of an explosive; or the frame or receiver of any such weapon").

Although the definitions of "firearm" in sections 609.666 and 609.669 are consistent with the dictionary definitions Haywood cites (i.e., requiring explosive force), the legislature expressly limited those definitions to their respective statutory sections. *See* Minn. Stat. § 609.666, subd. 1 (stating that the definitions therein are "[f]or purposes of this section"); Minn. Stat. § 609.669, subd. 2 (same). Moreover, the legislature adopted those definitions after the supreme court's decision in *Seifert*, demonstrating that the legislature knows how to define the term "firearm" more narrowly within chapter 609 than the supreme court did in *Seifert*. *See* 1995 Minn. Laws ch. 244, § 23, at 2339 (adopting definition of "firearm" for crime of civil disorder); 1993 Minn. Laws ch. 326,

10

art. 1, § 18, at 1987 (adopting definition of "firearm" for crime of negligent storage). Because the legislature limited its use of the narrower definition of firearm to two sections of chapter 609, we do not discern legislative intent to use a similar definition for all of chapter 609.

Haywood also argues that "[a]ny interpretation that a BB gun, essentially a toy for adults, is legally equivalent to a traditional firearm is an absurd result that was not intended by the legislature." Haywood relies, in part, on this court's decision in *Coauette*. That reliance is unavailing. In *Coauette*, this court considered whether a paintball gun is a "firearm" within the meaning of the drive-by-shooting statute, Minn. Stat. § 609.66, subd. 1e(a) (1998), and the ineligible-firearm-possession statutes, Minn. Stat. §§ 609.165, subd. 1b(a), 624.713, subd. 1(b) (1998). 601 N.W.2d at 445. This court reasoned:

> In contrast to *Seifert* and *Newman*, in which the air guns were designed to shoot BB pellets that would pierce and harm the objects struck—whether bird, rodent, or human—we take judicial notice of the fact that the gun here was designed for use in a game and that its projectiles are liquid-paint capsules designed to burst on impact, rather than to pierce. Of course, a paintball may break skin or destroy eyes (as can a baseball or snowball or rubber-band-launched paper clip). But, like those items, a paintball is not intended or designed to cause, in ordinary use, any harm at all. And a paintball has nothing like the destructive capacity of a bullet or BB. Therefore, the gun that fires the paintball does not—as a matter of statutory interpretation—constitute a "firearm."

*Id*. at 446-47. In sum, this court concluded that a paintball gun is not a firearm because it is *unlike* a BB gun. *Id*. at 447. *Coauette* simply does not support Haywood's suggestion

11

that a BB gun is "essentially a toy for adults" and not a firearm for the purpose of ineligible possession of a firearm.

Lastly, Haywood relies on the rule of lenity, arguing that if there is doubt regarding legislative intent to include BB guns within the definition of firearm under section 609.165, subd. 1b(a), the doubt must be resolved in his favor. "A rule of strict construction applies to penal statutes, and all reasonable doubt concerning legislative intent should be resolved in favor of the defendant. If construction of a statute is uncertain, a statute may not be interpreted to create criminal offenses that the legislature did not contemplate." *State v. Colvin*, 645 N.W.2d 449, 452 (Minn. 2002) (citation omitted).

Based on the caselaw holding that a BB gun is a firearm for the purposes of aggravated robbery with a "dangerous weapon" as defined by Minn. Stat. § 609.02, subd. 6, drive-by shooting under Minn. Stat. § 609.66, subd. 1e(a), and prohibited person in possession of a firearm under Minn. Stat. § 624.713, subd. 1(b), as well as the legislature's failure to amend chapter 609 to include a comprehensive definition of firearm that excludes BB guns, we have no doubt that the legislature intends to include BB guns in the meaning of "firearm" under section 609.165, subd. 1b(a). *See* Minn. Stat. § 645.17(4). Thus, the rule of lenity does not apply. *See Colvin*, 645 N.W.2d at 452 (stating that rule of lenity applies "[i]f construction of a statute is uncertain").

**II.**

Haywood argues that section 609.165 is unconstitutionally vague because "ambiguity over what exactly constitutes a firearm under Minn. Stat § 609.165 is vague

12

to the point that the average person would not know what constitutes a firearm and what is, therefore illegal, under the statute."

The federal and state constitutions provide that the state shall not deprive a person of life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1; Minn. Const. art. I, § 7. "It is well established that the right to due process includes the right to not be convicted and punished based on an unconstitutionally vague statute." *State v. Phipps*, 820 N.W.2d 282, 285 (Minn. App. 2012). "The void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *State v. Bussmann*, 741 N.W.2d 79, 83 (Minn. 2007) (quotation omitted).

"The constitutionality of a statute presents a question of law, which [appellate courts] review de novo." *State v. Crawley*, 819 N.W.2d 94, 101 (Minn. 2012). "Minnesota statutes are presumed to be constitutional, and our power to declare a statute unconstitutional should be exercised with extreme caution and only when absolutely necessary." *Bussmann*, 741 N.W.2d at 82 (quotation omitted). "A party challenging a statute on constitutional grounds must demonstrate, beyond a reasonable doubt, that the statute violates a provision of the constitution." *State v. Grossman*, 636 N.W.2d 545, 548 (Minn. 2001).

"[D]ue process requirements are satisfied by specifying standards of conduct in terms that have acquired meaning involving reasonably definite standards either according to the common law or by long and general usage." *Bussmann*, 741 N.W.2d at

13

83 (quotation omitted). Conversely, the failure of "persistent efforts to establish a standard can provide evidence of vagueness." *Johnson v. United States*, 135 S. Ct. 2551, 2558 (2015) (quotation and alteration omitted). The term "firearm" has acquired a reasonably definite meaning as a result of caselaw dating back to 1977, which consistently treats BB guns as firearms for certain crimes involving the use or possession of firearms. *See Seifert*, 256 N.W.2d at 88 (holding that a BB gun is a firearm for the purpose of aggravated robbery with a dangerous weapon); *Fleming*, 724 N.W.2d at 540 (holding that a BB gun is a firearm for the purpose of prohibited possession under section 624.713, subdivision 1); *Newman*, 538 N.W.2d at 478 (holding that a BB gun is a firearm within the meaning of the drive-by-shooting statute). Most significantly, *Fleming* clearly and unambiguously held, approximately nine years ago, that a person convicted of a crime of violence is prohibited from possessing a BB gun. 724 N.W.2d at 541. Even though *Fleming* addressed prohibited possession under section 624.713, subdivision 1, that statute is coextensive with section 609.165, subdivision 1b(a), and prohibits identical conduct.

Given the definition adopted by the supreme court in *Seifert* and applied by this court in *Newman* and *Fleming*, we disagree with Haywood's assertion that "[t]he term firearm does not have sufficient definiteness [such] that ordinary people can understand what conduct is prohibited." *See Bussmann*, 741 N.W.2d at 83-84 (concluding that the term "religious or spiritual advice, aid, or comfort" in Minn. Stat. § 609.344, subd. 1(l)(ii) (2006), had acquired a reasonably definite meaning from the use of the same term in another statute and caselaw interpreting and applying that statute). Because the term

14

"firearm" in section 609.165, subdivision 1b(a), has acquired a reasonably definite meaning under caselaw, the statute is not unduly vague and its application here does not violate due process.

## D E C I S I O N

Because a BB gun is a "firearm" within the meaning of prohibited possession of a firearm under Minn. Stat. § 609.165, subd. 1b(a), the district court did not err by denying Haywood's motion to dismiss the charge under the statute or by instructing the jury that a BB gun is a firearm under Minnesota law. And because the term "firearm" in Minn. Stat. § 609.165, subd. 1b(a), has developed a reasonably definite meaning under caselaw, the district court did not err by refusing to dismiss the charge on due-process grounds.

**Affirmed.**