*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1921**

State of Minnesota,
Respondent,

vs.

Jimmy Clyde Griffin,
Appellant.

**Filed August 22, 2016
Affirmed
Toussaint, Judge\***

Hennepin County District Court
File No. 27-CR-15-10001

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Elizabeth R. Johnston, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Richard Schmitz, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Stauber, Presiding Judge; Reyes, Judge; and Toussaint, Judge.

---

\* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**UNPUBLISHED OPINION**

**TOUSSAINT**, Judge

On appeal from his convictions of prohibited person in possession of a firearm and fifth-degree controlled substance crime, appellant argues (1) the seized pellet gun and marijuana should have been suppressed when the district court judge advised and authorized appellant's probation officer to conduct a warrantless search of appellant's residence based on tips that appellant had a .38 caliber gun and drugs; (2) the district court improperly directed a verdict when it instructed the jury that pellet guns are firearms under Minnesota law; (3) the court materially misstated the law when it instructed the jury that the word "knowingly" only refers to possession of the firearm and that the state was not required to prove appellant knew the gun was a firearm under state law; and (4) the state's evidence failed to establish that appellant possessed a firearm beyond a reasonable doubt because he possessed a pellet gun, and a pellet gun is not a firearm within the meaning of the statute. Because (1) the search of Griffin's home was supported by reasonable suspicion, (2) the district court did not abuse its discretion in its jury instructions, and (3) there is sufficient evidence to support Griffin's firearm conviction, we affirm.

**D E C I S I O N**

**I.**

Appellant Jimmy Griffin argues that a pellet gun and marijuana seized during an April 2015 search of his home must be suppressed because the search was not supported by reasonable suspicion. The search was conducted by Griffin's probation agent after she received a tip that Griffin had drugs in a black backpack and a second tip that Griffin had

drugs and kept a gun in his desk drawer. After the district court denied Griffin's motion to suppress, a jury convicted him of possession of a firearm by an ineligible person in violation of Minn. Stat. § 624.713, subd. 1(2) (2014), and fifth-degree possession of a controlled substance in violation of Minn. Stat. § 152.025, subd. 2(b)(1) (2014). We review de novo a district court's order on constitutional questions involving searches and seizures. *State v. Anderson*, 733 N.W.2d 128, 136 (Minn. 2007). The district court's factual findings will not be disturbed unless they are clearly erroneous. *Id.*

Both the federal and state constitutions guarantee individuals the right to be free from "unreasonable searches and seizures." U.S. Const. amend. IV; Minn. Const. art. I, § 10. The warrantless search of a person's residence is presumptively unreasonable under the Fourth Amendment. *Anderson*, 733 N.W.2d at 136. The United States Supreme Court, however, has concluded that a state's interest in ensuring that probationers comply with the conditions of their probation "presents 'special needs' beyond normal law enforcement that may justify departures from the usual warrant and probable cause-requirements." *Griffin v. Wisconsin*, 483 U.S. 868, 873-75, 107 S. Ct. 3164, 3168-69 (1987). A warrantless search of a probationer's home is valid if it is reasonable in light of the totality of the circumstances. *Anderson*, 733 N.W.2d at 138. In this context, "the reasonableness of a search is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." *United States v. Knights*, 534 U.S. 112, 118-19, 122 S. Ct. 587, 591 (2001) (quotation omitted); *see also Anderson*, 732 N.W.2d at 137 (adopting *Knights's* approach).

We apply the *Knights* test to determine the level of suspicion necessary to make the probation search of Griffin's home reasonable. We first consider the degree to which the search infringed on Griffin's right to privacy. *Knights*, 534 U.S. at 119, 122 S. Ct. at 591. As the Minnesota Supreme Court explained in *Anderson*, Griffin's "reasonable expectation of privacy was diminished merely by virtue of his status as a probationer." 733 N.W.2d at 139. Griffin was also subject to a probation condition requiring him to submit to "cursory searches of [his] person and residence." Griffin does not challenge the validity of this condition. A valid search condition further reduces a probationer's expectation of privacy. *Knights*, 534 U.S. at 119-20, 122 S. Ct. at 592.

Second, we consider "the degree to which [the search] is needed for the promotion of legitimate governmental interests." *Id.* at 119, 122 S. Ct. at 591. We must recognize "the state's legitimate interest in ensuring that [Griffin] abides by the terms of his probation." *Anderson*, 733 N.W.2d at 140. Griffin was on probation for a fifth-degree controlled-substance offense, and his probation agreement specifically forbade him from possessing any "non-prescribed mood-altering substances." As conditions of probation, Griffin was also prohibited from possessing any firearms or ammunition and required to remain law abiding. The institution of probation assumes "that the probationer is more likely than the ordinary citizen to violate the law." *Knights*, 534 U.S. at 120, 122 S. Ct. at 592 (quotation omitted). At the same time, the state also has the "hope that [a probationer] will successfully complete probation and be integrated back into the community." *Id.* at 120-21, 122 S. Ct. at 592. The state was therefore justified in focusing on Griffin to ensure that he followed the terms of his probation. *See id.* at 121, 122 S. Ct. at 592 (stating that the state "may . . . justifiably focus

4

on probationers in a way that it does not on the ordinary citizen"); *Anderson*, 733 N.W.2d at 137 (explaining that the state has a "special need" to ensure that probationers comply with conditions).

In weighing similar competing interests, the United States Supreme Court in *Knights* and the Minnesota Supreme Court in *Anderson* concluded that, where a valid search condition exists, a warrantless search of a probationer's residence may be based on reasonable suspicion. *Knights*, 534 U.S. at 121, 122 S. Ct. at 592; *Anderson*, 733 N.W.2d at 140. Likewise, because Griffin was on probation and subject to a valid search condition, we determine that the search of his home was reasonable under the United States and Minnesota Constitutions as long as it was based on reasonable suspicion.[1]

The district court determined that reasonable suspicion existed to support the search of Griffin's residence.[2] The court found reasonable suspicion based on the information provided to Griffin's probation officer, Noni Karkoska, by two informants.

The first informant contacted Karkoska on February 6, 2015. She told Karkoska that Griffin had been selling marijuana, which he kept in a black backpack. From prior contacts,

---

[1] In the district court, Griffin argued that the search of his residence went beyond the "cursory search[]" authorized by his probation condition and therefore could not be based on reasonable suspicion. On appeal, Griffin does not make this claim. Accordingly, we do not address whether the search exceeded the scope of the probation condition or what effect this would have on the level of suspicion required for the search. *See Scruggs v. State*, 484 N.W.2d 21, 24 n.1 (Minn. 1992) (stating that a claim not addressed in appellant's brief is forfeited). We note, however, the district court's finding that Griffin gave the probation officer consent to search the drawer where the pellet gun was located and that prior to that point "the cursory search provision had not been violated."

[2] The district court actually went further and determined that the search was justified under the higher probable-cause standard.

5

Karkoska knew that this informant had a long-standing relationship with Griffin. The second informant called Karkoska on March 31, 2015. Although Karkoska did not personally know this informant and the informant did not leave her name, the informant left a phone number at which Karkoska subsequently contacted her. The second informant told Karkoska that there were drugs in Griffin's home and that Griffin had a ".38-caliber" gun in his desk drawer. The district court found that both informants came forward voluntarily and without solicitation. The district court further found that both informants appeared to be first-time citizen informants and were presumed to be reliable. The court also noted that neither person was anonymous. Both informants left a phone number, and the first informant also gave her name.

Reasonable suspicion requires "'a sufficiently high probability that criminal conduct is occurring to make the intrusion on the probationer's privacy interest reasonable.'" *Anderson*, 733 N.W.2d at 138 (quoting *Knights*, 534 U.S. at 121, 122 S. Ct. at 592). An "unarticulated hunch" is not enough. *Id.* (quotation omitted). There must be "a particularized and objective basis" for suspecting criminal activity. *Id.* (quotation omitted). Whether reasonable suspicion exists is determined based on the totality of the circumstances. *State v. Davis*, 732 N.W.2d 173, 182 (Minn. 2007).

Griffin argues that the search was not supported by reasonable suspicion because "neither informant had a track record of providing reliable information in the past so there was no inference to be made that the informants were currently reliable." But "[w]e presume that tips from private citizen informants are reliable." *State v. Timberlake*, 744 N.W.2d 390, 394 (Minn. 2008) (quotation omitted). This is especially true "when informants give

6

information about their identity so that police can locate them if necessary." *Id.* (quotation omitted). As the district court found, the informants were identifiable private citizens. The first informant provided her name and phone number and was known to Karkoska. While the second informant did not give her name, she provided a phone number through which Karkoska successfully contacted her. In addition, both informants came forward voluntarily. This also supports their reliability. *See State v. Ross*, 676 N.W.2d 301, 304 (Minn. App. 2004) (stating that "the informant is presumably more reliable if the informant voluntarily comes forward").

Furthermore, the information provided by the informants was based on first-hand knowledge. "Recent personal observation of incriminating conduct has traditionally been the preferred basis for an informant's knowledge." *State v. Wiley*, 366 N.W.2d 265, 269 (Minn. 1985). Both informants said that Griffin was in possession of narcotics, and the second informant said that she had personally seen a gun in Griffin's home.

Griffin also argues that there was no reasonable suspicion for the search because the information provided by the informants was not independently corroborated by probation or police. But given the presumed reliability of the citizen-informant tips, corroboration was not necessary to create reasonable suspicion. *State v. McGrath*, 706 N.W.2d 532, 540 (Minn. App. 2005), *review denied* (Minn. Feb. 22, 2006). Also, even if some corroboration were required, the two similar, independent tips provided within a two-month period corroborated each other. *See State v. Hochstein*, 623 N.W.2d 617, 623 (Minn. App. 2001) (upholding issuance of search warrant when the statement of one informant was corroborated by the similar statements of two other informants).

The information provided by the two informants created a "particularized and objective basis" for suspecting criminal activity in Griffin's home. *Anderson*, 733 N.W.2d at 138 (quotation omitted). The search was based on more than an "unarticulated hunch." *Id.* (quotation omitted). Therefore, the search was supported by reasonable suspicion, and the district court did not err by denying Griffin's motion to suppress.

Griffin also argues that the search violated the separation-of-powers doctrine because Karkoska was "advised and authorized" to conduct the search by a district court judge. Griffin concedes that he did not raise this argument before the district court. Appellate courts generally do not consider matters not argued to and considered by the district court. *Roby v. State*, 547 N.W.2d 354, 357 (Minn. 1996). We may, however, review a matter that was not properly raised "when the interests of justice require consideration of such issues and doing so would not unfairly surprise a party to the appeal." *Id.* In the interests of justice, we will briefly address Griffin's claim.

Probation officers serve at "the pleasure of the [district] court" and "act under the orders of the [district] court." Minn. Stat. § 244.19, subds. 1, 3 (2014). Therefore, Karkoska's consultation with a district court judge prior to conducting the search was not inappropriate. Griffin has not alleged that the district court did more than tell Karkoska that she believed a search would be proper given the information provided by the two informants and the search condition that Griffin agreed to as part of his probation. This is similar to a judge authorizing a search by signing a warrant. Moreover, while Griffin had the right to have his case heard before a judge who had "no actual bias against [him] or interest in the outcome of his particular case," *McKenzie v. State*, 583 N.W.2d 744, 747 (Minn. 1998) (quotation omitted),

8

Griffin cannot claim bias because the judge who Karkoska consulted with had no part in the subsequent hearing on Griffin's motion to suppress or in his trial.

## II.

Griffin next argues that by instructing the jury that "[p]ellet guns and bb guns are firearms under Minnesota law," the district court removed the issue from the jury's consideration and "effectively directed a verdict on the 'firearm' element of this offense." We disagree.

District courts have considerable latitude in selecting the language of jury instructions. *State v. Gatson*, 801 N.W.2d 134, 147 (Minn. 2011). We review the district court's jury instructions under the abuse-of-discretion standard. *State v. Koppi*, 798 N.W.2d 358, 361 (Minn. 2011). The instructions must be viewed as a whole to determine if they fairly and adequately explain the law. *State v. Kuhnau*, 622 N.W.2d 552, 555-56 (Minn. 2001). A district court errs if the instructions materially misstate the law. *Id*. at 556.

In addressing Griffin's argument, we first discuss whether a pellet gun is a firearm under Minn. Stat. § 624.713 and then determine whether the district court's instruction violated Griffin's constitutional rights by directing a verdict on the firearm element.

Minn. Stat. § 624.713 does not define "firearm." Although the statute prohibits possession of a "firearm" by a person convicted of a crime of violence, Minn. Stat. § 624.713, subd. 1(2), the district court in *State v. Fleming* determined that it did not prohibit the possession of a BB gun and dismissed the charge against the defendant. 724 N.W.2d 537, 538 (Minn. App. 2006). We reversed, holding that the definition of "firearm" includes a BB gun for purposes of the statute. *Id*. at 540-41. In doing so, we applied the definition of

9

"firearm" used by the supreme court in *State v. Seifert*, 256 N.W.2d 87, 88 (Minn. 1977). *Id.* at 540. The supreme court in *Seifert* held that a BB gun was a "firearm" within the meaning of a "dangerous weapon" under Minn. Stat. § 609.02, subd. 6 (1974). 256 N.W.2d at 88. Minn. Stat. § 609.02, subd. 6, states that a "firearm" is a "dangerous weapon" but, like Minn. Stat. § 624.713, does not define "firearm." The *Seifert* court used the definition of firearm in Minn. Stat. § 97.40, subd. 34 (1974), the game-and-fish law (now codified at Minn. Stat. § 97A.015, subd. 19 (2014)). *Id.* Under this definition, a firearm is "any gun from which shot or a projectile is discharged by means of an explosive, gas, or compressed air." *Id.* (quoting Minn. Stat. § 97.40, subd. 34). In *Fleming*, we concluded that by declining to define "firearm" differently for the purposes of Minn. Stat. § 624.713, the legislature presumptively adopted the definition used by the supreme court in *Seifert*. *Fleming*, 724 N.W.2d at 540.

Recently, in *State v. Haywood*, we determined that a BB gun is a "firearm" within the meaning of Minn. Stat. § 609.165, subd. 1b(a) (2012), which, like the statute at issue in *Fleming* and this case, prohibits a person convicted of a crime of violence from possessing a firearm. *Haywood*, 869 N.W.2d 902, 909 (Minn. App. 2015), *review granted* (Minn. Dec. 15, 2015). In *Haywood*, we relied on *Fleming* and the definition of "firearm" applied by the supreme court in *Seifert*. *Id.* at 905-08.

Although Griffin's case involves a pellet gun, rather than a BB gun, the precedent cited above remains applicable. Griffin concedes that "there is no factual or legal basis to distinguish pellet guns from the line of cases dealing with BB guns." The gun found in Griffin's possession was powered by $CO_2$. The guns at issue in both *Seifert* and *Fleming* were also powered by $CO_2$. *Seifert*, 256 N.W.2d at 88; *Fleming*, 724 N.W.2d at 540. The

only difference between those guns and the gun at issue here appears to be the type of shot fired. "Pellet" has been defined as "[a] bullet or piece of small shot." *The American Heritage Dictionary of the English Language* 1301 (5th ed. 2011). Similarly, "BB" is defined as "[a] pellet or ball, usually of steel coated with copper or nickel, that measures 7/40 of an inch (0.44 centimeter) in diameter, used in air rifles." *Id.* at 154. Accordingly, a pellet gun, like a BB gun, fits the *Seifert* definition of a firearm as "any gun from which shot or a projectile is discharged by means of an explosive, gas, or compressed air." 256 N.W.2d at 88 (quotation omitted).

Griffin argues that *Fleming* and *Haywood* were wrongly decided and that the law is now in question because the supreme court granted review of *Haywood*. But we see no reason to reexamine the issue so soon after *Haywood* and in light of the precedent set by *Fleming* and *Seifert*. Moreover, unless and until they are overruled, we are bound to follow *Fleming* and *Haywood* as they are published opinions of this court. *State v. M.L.A.*, 785 N.W.2d 763, 767 (Minn. App. 2010), *review denied* (Minn. Sept. 21, 2010).

In light of our conclusion that a pellet gun is a firearm for purposes of Minn. Stat. § 624.713, we now address whether the district court's instruction was erroneous because it effectively directed a verdict on an element of the charged offense. Griffin cites the Minnesota Supreme Court's decision in *State v. Moore* to support his argument. 699 N.W.2d 733 (Minn. 2005). Moore was charged with first-degree assault for an incident that resulted in the loss of the victim's tooth. *Id.* at 736. The district court instructed the jury that loss of a tooth met the definition of great bodily harm. *Id.* The supreme court reversed, concluding that whether an injury constitutes great bodily harm is a question for the jury. *Id.* at 737-38. The supreme

11

court noted that this court had held in *State v. Bridgeforth*, 357 N.W.2d 393, 394 (Minn. App. 1984), *review denied* (Minn. Feb. 6, 1985), that there was a sufficient factual basis for a plea to first-degree assault where the defendant admitted that the victim lost a tooth during the assault. *Id.* at 737. The supreme court stated, however, that "there is a distinction between determining whether the evidence was sufficient to support a plea or conviction, as *Bridgeforth* concluded, and instructing the jury as a matter of law that an element of the offense has been established." *Id.* The supreme court then stated that because the jury instruction removed from the jury's consideration the question of whether the loss of a tooth constituted great bodily harm, the district court's instruction "violat[ed] the requirement that criminal convictions must rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." *Id.* (quotation omitted).

While the loss of a tooth does not constitute great bodily harm as a matter of law, this court has held that "the operative definition of 'firearm' includes a BB gun" under Minn. Stat. § 624.713, subd. 1. *Fleming*, 724 N.W.2d at 541. Unlike our holding in *Bridgeforth*, our holding in *Fleming* was not merely that evidence of a defendant's possession of a BB gun was sufficient to satisfy the "firearm" element of the offense. Rather, we determined that a BB gun is a firearm as a matter of law under Minn. Stat. § 624.713. As previously stated and conceded by Griffin, this holding applies equally to pellet guns. The district court "must instruct the jury on all matters of law necessary to render a verdict." Minn. R. Crim. P. 26.03, subd. 19(6). Here, the district court instructed the jury that "[p]ellet guns and bb guns are

12

firearms under Minnesota law." This instruction was an accurate statement of the law and was not an abuse of discretion.

**III.**

Griffin also claims that the district court abused its discretion when it instructed the jury as follows: "In the first element of Count 1, the word 'knowingly' refers only to the possession. The state is not required to prove the defendant knew the object received was a firearm under Minnesota law." The instruction was given in response to two jury questions during deliberations about the meaning of the word "knowingly" in the court's previous instruction requiring the state to prove that Griffin "knowingly possessed a firearm." Griffin claims this instruction misstated the law. He argues that the state was required to prove that he knew that Minnesota law defined a pellet gun as a firearm. We disagree.

In response to a jury's question on a point of law, the district court may, after notice to the parties, give additional instructions to the jury in open court. Minn. R. Crim. P. 26.03, subd. 20(3)(a); *State v. Murphy*, 380 N.W.2d 766, 772 (Minn. 1986). "[I]f a jury is confused, additional instructions clarifying those previously given may be appropriate since the interests of justice require that the jury have a full understanding of the case and the rules of law applicable to the facts under deliberation." *Murphy*, 380 N.W.2d at 772 (quotation omitted). As stated above, jury instructions are reviewed for an abuse of discretion and to ensure they do not misstate the law. *Kuhnau*, 622 N.W.2d at 555-56.

The statute Griffin was convicted of violating provides that a person convicted of a crime of violence "shall not be entitled to possess a pistol or semiautomatic military-style assault weapon or . . . any other firearm." Minn. Stat. § 624.713, subd. 1(2). The statute

13

contains no express knowledge or mens rea requirement. Mens rea is the element of a crime that requires "the defendant [to] know the facts that make his conduct illegal." *Staples v. United States*, 511 U.S. 600, 605, 114 S. Ct. 1793, 1797 (1994). Because a mens rea requirement is strongly favored by the law, courts often interpret a statute that is silent as to mens rea to include a knowledge or other mental-state element. *State v. Ndikum*, 815 N.W.2d 816, 818-19 (Minn. 2012). Griffin maintains that this principle requires the state to prove that he knew the pellet gun was a firearm. He is mistaken.

Minnesota firearm possession statutes have been interpreted to require the state to prove the defendant's "knowledge of the prohibited item." *State v. Salyers*, 858 N.W.2d 156, 161 (Minn. 2015). In other words, in this case the state was required to prove that Griffin knew he possessed the pellet gun. The state, however, was not required to prove that Griffin knew a pellet gun was defined under Minnesota law as a firearm.

Griffin cites to *Ndikum* to support his argument. In that case, the supreme court dealt with a statute criminalizing the possession of a pistol in public without a permit. 815 N.W.2d at 818. The statute contained no express mens rea requirement. *Id.* The supreme court imputed a mens rea element into the statute, requiring the state to prove that the defendant "knew he possessed the pistol." *Id.* at 822. *Ndikum* is consistent with the district court's instruction in this case. It holds only that the state must prove the defendant knew he possessed the prohibited item. *Id.* It does not require the state to prove that the defendant knew that Minnesota law defined the item as a pistol.

Griffin also argues that in controlled-substance crimes, "the state must prove that defendant consciously possessed, either physically or constructively, the substance and *that*

14

*defendant had actual knowledge of the nature of the substance*." *State v. Florine*, 303 Minn. 103, 104, 226 N.W.2d 609, 610 (1975) (emphasis added). While the reasoning of *Florine* has been applied to cases involving section 624.713, these cases have used *Florine* to imply a mental state as to a defendant's knowing possession of a firearm, not a defendant's knowledge of the fact that the possessed object was a firearm under Minnesota law. *See, e.g.*, *State v. Olson*, 326 N.W.2d 661, 663 (Minn. 1982) (citing *Florine* and noting that Olson "consciously exercised" control over a firearm, in violation of Minn. Stat. § 624.713); *State v. Willis*, 320 N.W.2d 726, 729 (Minn. 1982) (same).

Moreover, Griffin's knowledge that a pellet gun is a firearm under Minnesota law is distinguishable from knowledge of the nature of a controlled substance because Griffin is not arguing that he did not know that the pellet gun was a pellet gun. Instead, he claims that he was unaware that a pellet gun constituted a firearm under Minnesota law. This is analogous to a person convicted of a controlled substance crime admitting that he knew cocaine was in his possession but claiming that his conviction cannot stand because he did not know that cocaine was a controlled substance. "[I]gnorance of the law is no excuse." *State v. King*, 257 N.W.2d 693, 697 (Minn. 1977). Also, by statute, "[c]riminal intent does not require proof of knowledge of the existence or constitutionality of the statute under which the actor is prosecuted or the scope or meaning of the terms used in that statute." Minn. Stat. § 609.02, subd. 9(5) (2014). The district court's instruction was an accurate statement of the law and was not an abuse of discretion.

**IV.**

Finally, Griffin argues that the evidence is insufficient to support his conviction for possession of a firearm by an ineligible person. Griffin does not claim that he did not possess the pellet gun or that he was not prohibited from possessing a firearm. He claims only that the evidence is insufficient because a pellet gun is not a firearm under Minnesota law.

In considering a claim of insufficient evidence, we conduct a painstaking analysis of the record to determine if the evidence was sufficient to allow the jury to reach the verdict that it did. *State v. Ortega*, 813 N.W.2d 86, 100 (Minn. 2012). We view the evidence in the light most favorable to the verdict and assume that the jury believed the state's witnesses and disbelieved any contrary evidence. *State v. Fox*, 868 N.W.2d 206, 223 (Minn. 2015), *cert. denied*, 136 S. Ct. 509 (2015). The verdict will not be disturbed "if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the defendant was guilty of the charged offense." *Ortega*, 813 N.W.2d at 100.

As discussed above, a pellet gun is a firearm under Minnesota law. The gun was found in a desk drawer in Griffin's apartment, Griffin told his probation officer where he stored the gun, and Griffin admitted possessing the gun at trial. Finally, Griffin stipulated at trial that he was ineligible to possess a firearm on the date of the offense. The evidence is sufficient to support Griffin's conviction.

**Affirmed.**