STATE OF MINNESOTA

IN SUPREME COURT

A14-1792

Court of Appeals                                                                Hudson, J.
                                                Took no part, Chutich, McKeig, JJ.

State of Minnesota,

                    Respondent,

vs.                                                              Filed:  October 19, 2016
                                                            Office of Appellate Courts
David Lee Haywood,

                    Appellant.

_____

Lori Swanson, Attorney General, Saint Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Thomas R. Ragatz, Assistant Ramsey County Attorney, Saint Paul, Minnesota, for respondent.

Rochelle Winn, Assistant Public Defender, Saint Paul, Minnesota; and

Grant Gibeau, Special Assistant Public Defender, St. Louis Park, Minnesota, Tara Reese Duginske, Special Assistant Public Defender, Minneapolis, Minnesota, for appellant.

Cort C. Holten, Jeffrey D. Bores, Gary K. Luloff, Chestnut Cambronne PA, Minneapolis, Minnesota, for amicus curiae Minnesota Police and Peace Officers Association Legal Defense Fund.

_____

1

Under Minn. Stat. § 609.165 (2014), the plain meaning of the word "firearm" does not include an air-powered BB gun.

Reversed, conviction vacated.

O P I N I O N

HUDSON, Justice.

This case presents the question of whether an air-powered BB gun is a "firearm" under the felon-in-possession statute, Minn. Stat. § 609.165 (2014). The State charged appellant David Haywood with one count of Possession of a Firearm by an Ineligible Person under Minn. Stat. § 609.165, subd. 1b. Haywood filed two motions to dismiss. In the first motion, Haywood argued that the charge should be dismissed because the BB gun that police found in his possession was not a "firearm" within the meaning of Minn. Stat. § 609.165. In his second, alternative motion, Haywood challenged the statute as unconstitutionally vague. The district court denied both motions.

At trial, the district court instructed the jury that a BB gun is a firearm under Minnesota law. Haywood objected to the instruction. The jury found Haywood guilty and he was sentenced to 60 months in prison. The court of appeals affirmed the district court, holding that an air-powered BB gun is a "firearm" under Minn. Stat. § 609.165. *State v. Haywood*, 869 N.W.2d 902, 909 (Minn. App. 2015). The court of appeals also explained that the term "firearm" had developed a "reasonably definite meaning" through case law and, therefore, Minn. Stat. § 609.165 was not unconstitutionally vague as applied to

2

Haywood. 869 N.W.2d at 910. We reverse and vacate Haywood's conviction because an air-powered BB gun is not a "firearm" under the plain meaning of Minn. Stat. § 609.165.

I.

On January 1, 2013, Haywood was driving in downtown St. Paul when a St. Paul police officer arrested him for violating a no-contact order. Following an inventory search of his vehicle, the officers found a BB gun inside the glove compartment. The BB gun, a Walther CP99 Compact pistol, fires projectiles measuring .177 of an inch in diameter, using compressed air as a propellant. The parties do not dispute that the BB gun is a $CO_2$ air pistol replica of the Walther P99 Compact, a semi-automatic pistol chambered for either 9mm or .40-caliber cartridges. Because Haywood has a prior felony conviction that prevents him from lawfully possessing a firearm, the State charged him with one count of Possession of a Firearm by an Ineligible Person under Minn. Stat. § 609.165, subd. 1b.

Haywood moved to dismiss the charge on two grounds: (1) an air-powered BB gun is not a "firearm" within the meaning of Minn. Stat. § 609.165, subd. 1b; and (2) Minn. Stat. § 609.165, subd. 1b, is unconstitutionally vague because it does not give adequate notice that a convicted felon's possession of an air-powered BB gun is prohibited. The district court denied both motions in an order issued on May 31, 2013.[1] At trial, the court instructed the jury that a BB gun is a firearm under Minnesota law. The jury found

---

[1]     In a subsequent hearing, the district court heard Haywood's motion to suppress the BB gun and other physical evidence seized by police from his car, as well as statements he made to police while in custody. The district court denied Haywood's motion to suppress the BB gun. It granted in part and denied in part Haywood's motion to suppress statements he made to police, holding that the statements were taken in violation of Haywood's *Miranda* rights. These matters are not before us.

3

Haywood guilty of unlawfully possessing a firearm and the district court sentenced Haywood to 60 months in prison.

The court of appeals affirmed the district court, holding that an air-powered BB gun is a firearm under Minn. Stat. § 609.165. *Haywood*, 869 N.W.2d at 908-09. Relying on our decision in *State v. Seifert*, 256 N.W.2d 87 (Minn. 1977) (per curiam), the court held that the definition of the term "firearm" is not " 'restricted in meaning to guns using gunpowder,' " but is to be broadly construed to also include guns using compressed air as a propellant. *Haywood*, 869 N.W.2d at 906 (quoting *Seifert*, 256 N.W.2d at 88). The court reasoned that the Legislature's re-enactment of Minn. Stat. § 609.165 after *Seifert* without giving "firearm" another definition indicated its presumptive adoption of *Seifert*'s broad definition. *Haywood*, 869 N.W.2d at 906-08. It also explained that the term "firearm" had developed a "reasonably definite meaning" under case law and therefore Minn. Stat. § 609.165 was not unconstitutionally vague as applied to Haywood. *Haywood*, 869 N.W.2d at 910. We granted review to determine whether an air-powered BB gun is a firearm under Minn. Stat. § 609.165.

II.

We review statutory interpretation issues de novo. *State v. Rick*, 835 N.W.2d 478, 482 (Minn. 2013). "The objective of statutory interpretation is to ascertain and effectuate the Legislature's intent. If the Legislature's intent is clear from the statute's plain and unambiguous language, then [a court] interpret[s] the statute according to its plain meaning without resorting to the canons of statutory construction." *Id.* (citation omitted). "In the absence of a statutory definition, we generally turn to the plain, ordinary meaning of a

4

statutory phrase." *State v. Leathers*, 799 N.W.2d 606, 609 (Minn. 2011). When determining the plain and ordinary meaning of undefined words or phrases in a statute, courts should look to the dictionary definitions of those words and apply them in the context of the statute. *See, e.g.*, *A.A.A. v. Minn. Dept. of Human Servs.*, 832 N.W.2d 816, 820-21 (Minn. 2013).

Minnesota Statutes § 609.165, subd. 1b, provides:

(a) Any person who has been convicted of a crime of violence, as defined in section 624.712, subdivision 5, and who ships, transports, possesses, or receives a firearm, commits a felony and may be sentenced to imprisonment for not more than 15 years or to payment of a fine of not more than $30,000, or both.

Minn. Stat. § 609.165, subd. 1b(a). Significantly, section 609.165 does not define the word "firearm." In addition, the word is not defined in Minn. Stat. § 609.02 (2014), the definitions section for Minn. Stat. ch. 609 (2014).

No Minnesota appellate court has defined the term "firearm" in section 609.165. We have, however, construed the word "firearm" in the context of the definition of a "dangerous weapon" under Minn. Stat. § 609.02. *See Seifert*, 256 N.W.2d at 87-88.

In *Seifert*, we held that a .177-caliber $CO_2$ BB pistol was a "firearm" under Minn. Stat. § 609.02, subd. 6 (1974). Seifert pleaded guilty to aggravated robbery, Minn. Stat. § 609.245 (1974), which required proof that he was "armed with a dangerous weapon or inflict[ed] bodily harm," while committing a robbery. *Seifert*, 256 N.W.2d at 88. Minnesota Statutes § 609.02, subd. 6, defined "dangerous weapon" as "any *firearm*, whether loaded or unloaded, or any device designed as a weapon and capable of producing death or great bodily harm . . . ." (Emphasis added.) At the plea hearing, Seifert admitted

5

possessing an unloaded $CO_2$ BB pistol during the robbery; he also admitted that, to the best of his knowledge, his accomplice used a firearm. *Seifert*, 256 N.W.2d at 88. The district court accepted Seifert's plea and sentenced him to a minimum term of one year and one day in prison under Minn. Stat. § 609.11 (1975), which permitted imposition of a minimum sentence in certain situations in which the offender "possess[ed] a firearm or used a dangerous weapon at the time of the offense." *Seifert*, 256 N.W.2d at 88. Seifert later challenged both his plea and the imposition of the minimum sentence on the ground that he did not possess a dangerous weapon during the robbery because his BB gun was not a "firearm." *Id.* The district court denied relief, holding that the gun Seifert admitted using was clearly a "dangerous weapon,"[2] and we affirmed. *Id.* In explaining our decision, we stated:

> In our opinion, the fact that the gun defendant used required gas rather than gunpowder to discharge its projectile does not mean, as defendant contends, that the gun could not be a firearm within the meaning of the term "firearm" used in [section] 609.02. Having statutory purpose in mind, we think that term should be defined broadly to include guns using newer types of projectile propellants and should not be restricted in meaning to guns using gunpowder.

*Id.* We went on to note that the game-and-fish laws defined "firearm" as "any gun from which shot or a projectile is discharged by means of an explosive, gas, or compressed air." *Id.* (quoting Minn. Stat. § 97.40, subd. 34 (1976) (currently codified at Minn. Stat. § 97A.015, subd. 19 (2014)). We also observed that:

> The gun used by defendant might also qualify as a dangerous weapon under the alternative test contained in [section] 609.02 ("any device designed as a

---

[2]    The district court made no finding with respect to whether Seifert's accomplice did or did not possess a "dangerous weapon." *Seifert*, 256 N.W.2d at 88.

6

weapon and capable of producing death or great bodily harm"). In any event, defendant also admitted at the change-of-plea hearing that to the best of his knowledge the gun his accomplice used was a firearm. In conclusion, defendant's testimony at the change-of-plea hearing provided a sufficient factual basis for the plea . . . .

*Id.*

The court of appeals has twice relied on our opinion in *Seifert* to interpret the word "firearm" in other statutes. In the first of these two cases, *State v. Newman*, 538 N.W.2d 476, 477-78 (Minn. App. 1995), the court applied *Seifert* to interpret Minn. Stat. § 609.66, subd. 1e(a) (Supp. 1993), the felony drive-by shooting statute. In the second case, *State v. Fleming*, 724 N.W.2d 537, 538 (Minn. App. 2006), the statute at issue was Minn. Stat. § 624.713, subd. 1(b) (2004), which—like the statute at issue here—prohibits a person convicted of a crime of violence from possessing "a pistol . . . or any other firearm." And once again in this case, the court of appeals relied heavily on the rationale we articulated in *Seifert* to affirm Haywood's conviction.

The State urges us to follow *Seifert* and hold that a BB gun is a firearm under Minn. Stat. § 609.165. In support of its position, the State notes that in the nearly four decades since *Seifert*, the Legislature had ample opportunity to exclude BB guns from the definition of "firearm" in the criminal code. The failure to do so, the State contends, indicates that the Legislature has presumptively adopted the definition from *Seifert*.

Conversely, Haywood argues that we should reconsider our holding in *Seifert* because the definition of "firearm" applied in *Seifert* and by the court of appeals does not take into account the word's plain and ordinary meaning. Relying on the definition of "firearm" in various dictionaries, Haywood argues that in order for an object to be a

7

"firearm," the object must use gunpowder or some similar chemical explosive force. Haywood asserts that because an air-powered BB gun does not fire bullets or use explosive force, it is not a firearm under Minn. Stat. § 609.165. We agree and, for the reasons set forth below, hold that an air-powered BB gun is not a firearm.

As noted earlier, Minn. Stat. § 609.165, subd. 1(b)(a), does not define "firearm." In the absence of a statutory definition, we look to dictionary definitions to determine the plain meaning of words. *Larson v. Nw. Mut. Life Ins. Co.,* 855 N.W.2d 293, 301 (Minn. 2014); *see also Abrahamson v. St. Louis Cty. Sch. Dist,* 819 N.W.2d 129, 133 (Minn. 2012) ("We construe the words of a statute 'according to their common and approved usage.'" (quoting Minn. Stat. § 645.08 (1) (2014)). Here, the plain and ordinary meaning of the word "firearm" includes only devices that require explosive force. *Merriam-Webster* defines firearm as a "weapon from which a shot is discharged by gunpowder." *Merriam-Webster's Collegiate Dictionary* 471 (11th ed. 2003). *Webster's* defines firearm as "a small arms weapon, as a rifle or pistol, from which a projectile is fired by gun-powder." *Random House Webster's Unabridged Dictionary* 722 (2d ed. 2001). *The American Heritage Dictionary* defines firearm as "[a] weapon, especially a pistol or rifle, capable of firing a projectile and using an explosive charge as a propellant." *The American Heritage Dictionary of the English Language* 661 (5ᵗʰ ed. 2011). *Black's Law Dictionary* defines firearm as "[a] weapon that expels a projectile (such as a bullet or pellets) by the combustion of gunpowder or other explosive." *Firearm*, *Black's Law Dictionary* (9th ed.

8

2009).  In sum, dictionaries consistently define "firearm" as including only weapons that use explosive force. [3]

Here, Haywood was in possession of an air-powered BB gun: a Walther CP99 Compact pistol, which fires a projectile measuring .177 of an inch in diameter, using compressed air—not gunpowder or any other explosive force—as a propellant.  Under the plain and ordinary meaning of the term "firearm," Haywood's air-powered BB gun is not a firearm, and thus Haywood's possession of it did not violate section 609.165. [4]

Because our holding today rests on a plain-language analysis, we need not address Haywood's secondary argument that *Seifert* does not reflect the Legislature's post-*Seifert* definitions of "firearms" that have been incorporated into the criminal code.  Still, we note that our holding today finds support in the Minnesota criminal code.  At the time we decided *Seifert*, the term "firearm" was not defined in the criminal code.  Since *Seifert*, however, the Legislature has twice defined "firearm" in chapter 609.  Section 609.666 provides, in pertinent part, that a person who negligently stores a loaded firearm in a location to which a child is likely to gain access is guilty of a misdemeanor.  Minn. Stat. § 609.666, subd. 2 (2014).  Section 609.669 prohibits certain activities intended to further

---

[3]   Our more expansive definition of "firearm" in *Seifert* (in which we adverted to the game-and-fish law definition of firearm) was dictum in that we had no need to define firearm because Seifert had already admitted that his accomplice possessed a firearm.

[4]   We also held in *Seifert* that the district court did not err in imposing a minimum sentence on Seifert and that Seifert's testimony at the plea hearing that his accomplice used a firearm adequately supported his guilty plea.  *Seifert*, 256 N.W.2d at 88.  These holdings are undisturbed by our decision today.

a civil disorder, including teaching or training another person in the use or manufacture of firearms and explosives, and assembly for the purpose of training or practicing with firearms or explosives. Minn. Stat. § 609.669, subd. 1(a) (2014). Significantly, both statutes define a "firearm" as a device that expels a projectile by the action or force of *an explosion or combustion*. *See* Minn. Stat. §§ 609.666, subd. 1(a); 609.669, subd. 2(2).

Moreover, the Legislature has adopted other provisions that clearly differentiate "airguns" from "firearms." *See* Minn. Stat. § 609.66, subd. 1(a)(6) (defining the misdemeanor or gross-misdemeanor offense of furnishing "a firearm or airgun of any kind" to a child under 14 years of age outside of a municipality without parental permission), *id*., subd. 1b (2014) (defining the felony offense of furnishing "a firearm, airgun, ammunition, or explosive" to a minor under 18 years of age in any municipality without parental permission). Yet other provisions refer broadly to "a gun," Minn. Stat. § 609.66, subd. 1(a)(1) (reckless handling or use of "a gun or other dangerous weapon"), or "a gun of any kind," *id.*, subd. 1(a)(2) (intentionally pointing "a gun of any kind" at or toward another), suggesting that when the Legislature intends to refer broadly to guns that expel projectiles by explosive force, gunpowder, *and* compressed air, it knows how to do so.

The court of appeals relied on our opinion in *Seifert* to construe the word "firearm," not only in the present case, but in *Newman* and *Fleming*, as well. The court of appeals' reliance on *Seifert* in the absence of other authority was understandable, but the reliance is on dictum, nevertheless. Today, we have clarified the plain meaning of "firearm." We do not minimize the concerns of the State and amicus that, regardless of the means of propulsion, a BB gun is capable of producing death or great bodily harm. But that is

10

arguably true of nail guns and other devices that use compressed air, as well. Even so, the question of how to define a "firearm" is best left to the Legislature. *See Morris v. State*, 765 N.W.2d 78, 85 (Minn. 2009) ("The development of . . . public policy . . . [is] better left to the [L]egislature."). "It is not for the courts to make, amend, or change the statutory law, but only to apply it." *R.S. v. State*, 459 N.W.2d 680, 696 (Minn. 1990) (quoting *State v. West*, 285 Minn. 188, 197, 173 N.W.2d 468, 474 (1969)).[5]

Reversed, conviction vacated.


CHUTICH, J., took no part in the consideration or decision of this case.

MCKEIG, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.

---

[5]    Because we reverse the decision of the court of appeals and vacate Haywood's conviction, we need not address his constitutional void-for-vagueness claim.