*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1755**

State of Minnesota,
Respondent,

vs.

Matthew Elijah Mason,
Appellant.

**Filed December 19, 2016
Affirmed in part and reversed in part
Larkin, Judge**

Crow Wing County District Court
File No. 18-CR-14-5029

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Donald F. Ryan, Crow Wing County Attorney, Candace Prigge, Assistant County Attorney, Brainerd, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jodi Proulx, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Larkin, Presiding Judge; Hooten, Judge; and Klaphake,

Judge.*

─────────────────

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**UNPUBLISHED OPINION**

**LARKIN**, Judge

Appellant challenges his convictions of first-degree aggravated robbery and possession of a firearm by a prohibited person, as well as the district court's imposition of an aggravated sentence on the aggravated robbery conviction. Because the evidence was sufficient to sustain appellant's conviction of first-degree aggravated robbery and appellant does not establish plain error justifying reversal of that conviction or the attendant sentence, we affirm in part. But we reverse and vacate appellant's conviction of possession of a firearm by a prohibited person based on recent decisions of the Minnesota Supreme Court and this court.

## FACTS

On December 11, 2014, respondent State of Minnesota charged appellant Matthew Elijah Mason with first-degree aggravated robbery under Minn. Stat. § 609.245, subd. 1 (2014), and possession of a firearm by a prohibited person under Minn. Stat. § 624.713, subd. 1(2) (2014). The complaint alleged that Mason purchased a BB gun for Lawrence Johnson and drove Johnson and Tessa Gould to a parking lot, where Johnson brandished the BB gun and stole marijuana and a cellphone from M.B. A jury found Mason guilty of both charges. The district court imposed a 216-month executed prison sentence on the aggravated robbery conviction. The sentence was an upward durational departure, and it was based on the jury's finding that Mason had five or more felony convictions and that the offenses in this case were committed as part of a pattern of criminal conduct. The

district court also imposed a concurrent 60-month sentence on the firearm-possession charge. Mason appeals.

# D E C I S I O N

## I.

Mason contends that his "conviction for aiding and abetting aggravated robbery should be reversed because the state failed to prove the requisite knowledge and intent beyond a reasonable doubt." When considering an insufficient-evidence claim, this court carefully analyzes the record to determine whether the evidence, when viewed in a light most favorable to the conviction, was sufficient to permit the jurors to reach their verdict. *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989). This court "view[s] the evidence in a light most favorable to the verdict and assume[s] that the jury believed the state's witnesses and disbelieved contrary evidence." *State v. Brooks*, 587 N.W.2d 37, 42 (Minn. 1998). This court will not disturb the jury's verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the defendant was proved guilty of the offense charged. *Bernhardt v. State*, 684 N.W.2d 465, 476-77 (Minn. 2004).

"Whoever, while committing a robbery, is armed with a dangerous weapon or any article used or fashioned in a manner to lead the victim to reasonably believe it to be a dangerous weapon . . . is guilty of aggravated robbery in the first degree . . . ." Minn. Stat. § 609.245, subd. 1. Under subdivision 1 of the accomplice-liability statute, "[a] person is criminally liable for a crime committed by another if the person intentionally aids, advises, hires, counsels, or conspires with or otherwise procures the other to commit the crime."

Minn. Stat. § 609.05, subd. 1 (2014). Such a person "is also liable for any other crime committed in pursuance of the intended crime if reasonably foreseeable by the person as a probable consequence of committing or attempting to commit the crime intended." *Id.*, subd. 2 (2014).

The phrase "intentionally aids" in subdivision 1 of the accomplice-liability statute "includes two important and necessary principles: (1) that the defendant knew that his alleged accomplices were going to commit a crime, and (2) that the defendant intended his presence or actions to further the commission of that crime." *State v. McAllister*, 862 N.W.2d 49, 52 (Minn. 2015) (quotations omitted). A jury may infer the requisite state of mind for accomplice liability "through circumstantial evidence, including the defendant's presence at the scene of the crime, a close association with the principal offender before and after the crime, a lack of objection or surprise under the circumstances, and flight from the scene of the crime with the principal offender." *Id.* at 53.

In this case, the state relied on circumstantial evidence to prove Mason's state of mind. When reviewing the sufficiency of circumstantial evidence to sustain a conviction, an appellate court first "identif[ies] the circumstances proved, giving deference to the jury's acceptance of the proof of these circumstances and rejection of evidence in the record that conflicted with the circumstances proved by the State." *State v. Anderson*, 789 N.W.2d 227, 241-42 (Minn. 2010) (quotation omitted). Second, we "independently examine the reasonableness of all inferences that might be drawn from the circumstances proved, including inferences consistent with a hypothesis other than guilt" and determine "whether the circumstances proved are consistent with guilt and inconsistent with any rational

hypothesis except that of guilt." *Id.* at 242 (quotations omitted). An alternative hypothesis does not justify granting relief if the hypothesis is not plausible or supported by the evidence. *State v. Lahue*, 585 N.W.2d 785, 789 (Minn. 1998). This court will not overturn a conviction based on circumstantial evidence on the basis of mere conjecture. *Id.*

The trial evidence here established the following circumstances. At 5:17 a.m. on November 20, 2014, Gould contacted M.B. and asked to purchase two ounces of marijuana. M.B. quoted Gould a price of $550, Gould agreed to the price, and they arranged to meet that night to take care of it in Brainerd. Gould did not plan to pay for the marijuana. At 6:04 p.m., Gould sent Johnson a text message stating, "Dj ain't hittin me up….yu tryna do this liq?" At 6:06 p.m., Johnson replied, "Ya it shoulda been that way from tha beginning." Gould responded, "n aight let's dooo it." Johnson told Mason that Gould asked Johnson to "hit a lick for some weed." Mason later told the police that he understood "hit a lick for some weed" to mean take marijuana without paying for it.

Shortly after Johnson told Mason about Gould's request, Johnson asked Mason if Mason would accompany him to a store and buy a BB gun. Mason agreed, went to a local Walmart with Johnson, and purchased a BB gun. At 6:37 p.m., Gould sent Johnson a text message stating, "Boo yu gotta hurry thouu.. he's getting antsy." At 6:41 p.m., Gould sent Johnson a text message stating, "I want ya'll to take his phone too." At 6:52 p.m., Johnson sent Gould a text message stating, "We almost back needed a laser for my piece." After purchasing the BB gun, Johnson and Mason went to a residence in Brainerd where Gould was waiting.

At 7:14 p.m., Johnson sent Gould a text message stating that "[l]eggo," and at 7:19 p.m., Gould told M.B. to "[s]tart gettin in ready." Gould drove Johnson and Mason to the drug-exchange location. When they arrived, Mason moved to the driver's seat of the vehicle, Gould moved to the passenger seat, and Johnson sat behind Mason. Mason turned the vehicle's lights off "because obviously they're getting weed." At 7:28 p.m., Gould texted M.B., "I'm here." At 7:31 p.m., M.B. replied that he was "walking now." About 30 seconds later, Gould answered, "I'm the car right in front of yuu."

The interior of the car remained dark when M.B. entered the vehicle. M.B. asked the other occupants of the vehicle if they had a scale. M.B. handed Gould marijuana, and Gould smelled it. After Gould stated that the marijuana smelled good, Johnson used the BB gun that Mason had purchased to rob M.B. During the robbery, Gould told Johnson to take M.B.'s phone. Mason told M.B. to move his hands when M.B. tried to block access to his pockets. The trio relieved M.B. of his wallet, cell phone, cell-phone charger, and his marijuana. M.B. testified that Johnson took M.B.'s wallet and cell phone and that Mason took the charger for M.B.'s cell phone. Mason drove Gould and Johnson back to the Brainerd residence after the robbery, where Gould weighed the marijuana and gave some of it to Mason.

The circumstances proved are consistent with the jury's finding that Mason was guilty of aiding and abetting first-degree aggravated robbery and inconsistent with any rational hypothesis other than guilt. Mason's proffered alternative hypothesis that he did not know why Johnson wanted the BB gun when he purchased it, did not know that a robbery was going to take place, and did not intend to aid the robbery is not reasonable.

6

The text messages between Gould and Johnson establish that Mason bought the BB gun for Johnson shortly after Johnson told him that Gould asked Johnson to "hit a lick for some weed" and that the robbery happened within two hours of Mason purchasing the BB gun. Moreover, Mason received some of the marijuana that was taken during the robbery. In sum, there was sufficient evidence to establish, beyond a reasonable doubt, that Mason knew that Gould and Johnson were going to rob M.B. and that Mason intended his presence and actions to further commission of the robbery. We therefore do not disturb the jury's guilty verdict on the charge of first-degree aggravated robbery.

## II.

Mason argues that the district court "committed plain error that affected [his] substantial rights when it improperly instructed the jury that accomplice liability includes the element of reasonable foreseeability." He asks this court to reverse his conviction based on the alleged instructional error.

We review a district court's jury instructions for an abuse of discretion. *State v. Huber*, 877 N.W.2d 519, 522 (Minn. 2016). District courts are entitled to considerable latitude when selecting language for jury instructions, but a jury instruction cannot materially misstate the law. *State v. Carridine*, 812 N.W.2d 130, 144 (Minn. 2012). Appellate courts review jury instructions as a whole to determine whether the instructions accurately stated the law in a manner that could be understood by the jury. *State v. Kelley*, 855 N.W.2d 269, 274 (Minn. 2014).

Mason did not object to the aiding-and-abetting instruction in district court. When a defendant fails to object to jury instructions at trial, an appellate court reviews the

instructions for plain error. *State v. Milton*, 821 N.W.2d 789, 805 (Minn. 2012). "Under the plain-error doctrine, the appellant must show that there was (1) an error; (2) that is plain; and (3) the error affected substantial rights." *Huber*, 877 N.W.2d at 522. "An error is plain if it was clear or obvious," and an error is clear or obvious if the error "contravenes case law, a rule or a standard of conduct." *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006) (quotation omitted).

"An erroneous jury instruction affects a defendant's substantial rights if the error was prejudicial and affected the outcome of the case." *Huber*, 877 N.W.2d at 525. "An error in instructing the jury is prejudicial if there is a reasonable likelihood that giving the instruction in question had a significant effect on the jury's verdict." *Id.* (quotation omitted). The defendant has the burden of proving that an error was prejudicial, and it is a "heavy burden." *Id.* In determining whether a defendant has met his burden of proving prejudice, the supreme court considers (1) whether the relevant issue was contested at trial and (2) whether the state's evidence on the issue was overwhelming. *Id.* at 525-26.

If the first three prongs of the plain-error doctrine are satisfied, a reviewing court corrects the error only if it "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 522 (quotations omitted). If a reviewing court concludes that any prong of the plain-error analysis is not satisfied, the court need not consider the other prongs. *State v. Brown*, 815 N.W.2d 609, 620 (Minn. 2012).

"A person is criminally liable for a crime committed by another if the person intentionally aids, advises, hires, counsels, or conspires with or otherwise procures the other to commit the crime." Minn. Stat. § 609.05, subd. 1. The aiding-and-abetting statute

further provides that "[a] person liable under subdivision 1 is also liable for any crime committed in pursuance of the intended crime if reasonably foreseeable by the person as a probable consequence of committing or attempting to commit the crime intended." *Id.*, subd. 2.

The district court gave the following aiding and abetting instruction:

> Count 1) aiding and abetting aggravated robbery in the first degree defined: The statutes of Minnesota provide that a Defendant is guilty of a crime committed by another person when the Defendant has played an intentional role in aiding the commission of the crime and made no reasonable effort to prevent the crime before it was committed.
> Intentional role includes aiding, advising, hiring, counseling, conspiring with or procuring another to commit the crime.
> Count 1) aiding and abetting aggravated robbery in the first degree, elements. The elements of aiding and abetting are, first: The Defendant knew his alleged accomplices were going to or were committing a crime *or the crime was reasonably foreseeable by the Defendant as a possible consequence of committing or attempting to commit the crime intended.*
> Second, the Defendant intended that his presence and action aid the commission of the crime. And third, the Defendant's presence and actions did aid the commission of the crime.

(Emphasis added).

Mason argues that the italicized portion of the instruction "erroneously added the expansive liability instruction" when "[e]xpansive liability under section 609.05, subd. 2 was not at issue in this case" because "the state did not allege, either in the complaint or at trial, that the aggravated robbery was committed in furtherance or as a consequence of some other crime."

9

Minn. Stat. § 609.24 (2014) defines simple robbery as "tak[ing] personal property from the person or in the presence of another and us[ing] or threaten[ing] the imminent use of force against any person to overcome the person's resistance or powers of resistance to, or to compel acquiescence in, the taking or carrying away of the property." Minn. Stat. § 609.245, subd. 1, defines first-degree aggravated robbery, in relevant part, as the commission of a robbery while "armed with a dangerous weapon or any article used or fashioned in a manner to lead the victim to reasonably believe it to be a dangerous weapon." Although the state did not charge Mason with simple robbery, the state presented an expansive-liability theory at trial based on simple robbery. For example, the prosecutor argued that Mason knew that a robbery would occur and that even if he did not know that the BB gun would be used in that robbery, it was reasonably foreseeable that the BB gun would be used. In closing, the prosecutor argued that the case "comes down to" whether "there [is] evidence that proves that [Mason] knew that they were going to steal [the marijuana] and was it reasonably foreseeable that they were going to commit this lick and then a firearm would be used." The prosecutor also argued that Mason "knew a gun was going to be used – and even if he didn't, they were going to steal the weed." She stated that "[i]t's reasonably foreseeable if you are stealing from someone and you know you just purchased someone a firearm, that that might be used in that."

Mason does not cite authority indicating that the state had to separately charge simple robbery to obtain a conviction for aiding and abetting aggravated robbery based on an expanded-liability theory. Moreover, "[a] party is entitled to a specific jury instruction if evidence exists at trial to support the instruction." *State v. Yang*, 774 N.W.2d 539, 559

10

(Minn. 2009). Evidence in the record supports the expansive-liability instruction in this case. Mason told the police that Johnson told him that Gould asked Johnson to "hit a lick for some weed" and that he understood that phrase to mean take marijuana without paying for it. Mason also told the police that he purchased a BB gun for Johnson a short time later. Mason's statements support the state's theory that Mason knew that Gould and Johnson were going to rob M.B. and that it was reasonably foreseeable that the BB gun would be used in the robbery. Thus, the state was entitled to the expansive-liability instruction.

Mason also argues that "by adding the instruction, the trial court offered an alternative basis to find [Mason] guilty on the intended crime that negated the 'intentionally aiding' requirement." Mason contends that "[u]sing the conjunction 'or' in the instruction clearly gave jurors two alternatives upon which to convict [Mason], the first requiring 'intent,' and the second merely requiring 'reasonable foreseeability.'"

Mason relies on *State v. Mahkuk*, a case in which the district court instructed the jury that whether the defendant's knowledge that a crime was going to be committed by alleged accomplices and whether the defendant intended that his presence or acts encourage or further the crime were factors for the jury to consider in determining whether the defendant intentionally aided and abetted the commission of the crime. 736 N.W.2d 675, 680-81 (Minn. 2007). The supreme court concluded that the instruction was reversible error because it relieved the state of its burden to prove that the defendant intended to aid and abet the crime "by instructing the jury that it need only consider, not find beyond a reasonable doubt, whether [the defendant] had knowledge that a crime was going to be

11

committed and whether [the defendant] intended for his presence to encourage or further the completion of that crime." *Id.* at 683.

*Mahkuk* is distinguishable because the instruction here did not relieve the state of its burden to prove the requisite mental state. The jury instruction included the requirement that "the defendant *intended* that his presence and action aid the commission of the crime." It also instructed that "a Defendant is guilty of a crime committed by another person when the Defendant has played an *intentional role* in aiding the commission of the crime," which the instruction defined as including "aiding, advising, hiring, counseling, conspiring with or procuring another to commit the crime." (Emphasis added.) Viewing the aiding-and-abetting instruction as a whole, we are not persuaded that it constitutes error, much less plain error that is clear or obvious under current law. Thus, Mason's challenge to the jury instruction fails to satisfy the first two prongs of the plain-error standard.

Mason's challenge also fails to satisfy the third prong of the plain-error standard because there is not a reasonable likelihood that the alleged error significantly affected the jury's verdict. Although Mason contested the knowledge and intent elements of aggravated robbery at trial, the state presented strong evidence that Mason knew about Gould and Johnson's plan to rob M.B. and intended to aid the commission of the robbery. This evidence included: (1) Mason's admission that Johnson told him that Gould had asked Johnson to "hit a lick for some weed," (2) Mason's admission that he agreed to buy a BB gun for Johnson shortly after Johnson told him about Gould's request, (3) text messages sent between Gould and Johnson suggesting that Mason purchased the BB gun shortly before the robbery, (4) Mason's admission that he was in the driver's seat of the vehicle

12

where and when the robbery occurred, (5) Mason's admission that he purchased the BB gun that was used in the robbery, (6) M.B.'s testimony that Mason told him to move his hands during the robbery when he tried to block access to his pockets, (7) M.B.'s testimony that Mason went through one of his pockets during the robbery, (8) Mason's admission that he drove Gould and Johnson to a Brainerd residence after the robbery, and (9) Mason's admission that he received some of the marijuana that was taken during the robbery.

In sum, there is overwhelming evidence that Mason knew that Gould and Johnson planned to rob M.B. and that Mason intended his presence and actions to aid the commission of that crime. Moreover, the prosecutor did not argue that the state only needed to prove that a robbery was reasonably foreseeable. The prosecutor argued that Mason knew that a robbery would occur and intended to aid its commission and that it was reasonably foreseeable that the BB gun he had purchased would be used in the robbery. Under the circumstances, it is unlikely that the alleged instructional error significantly affected the jury's verdict. Mason therefore has not established that he is entitled to reversal of his first-degree aggravated-robbery conviction under the plain-error standard.

## III.

Mason contends that the district court erred at his sentencing trial "by allowing opinion testimony from the investigating officer [regarding] whether [his] prior convictions were a 'pattern' or 'had a connection.'" Mason asks this court to vacate his sentence and remand for a new sentencing trial. Mason did not object to this testimony at trial.

This court reviews unobjected-to testimony under the plain error standard. *State v. Strommen*, 648 N.W.2d 681, 686 (Minn. 2002). "Under the plain-error doctrine, the

13

appellant must show that there was (1) an error; (2) that is plain; and (3) the error affected substantial rights." *Huber*, 877 N.W.2d at 522. If any prong of the plain-error analysis is not satisfied, a court need not consider the other prongs. *Brown*, 815 N.W.2d at 620. If the appellant satisfies the first three prongs of the plain-error doctrine, a reviewing court corrects the error only if it "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Huber*, 877 N.W.2d at 522 (quotation omitted).

Other than a prior conviction, any fact that increases the penalty for a crime beyond the presumptive sentence prescribed by the Minnesota Sentencing Guidelines must be submitted to a jury and proved beyond a reasonable doubt. *State v. Shattuck*, 704 N.W.2d 131, 135, 141 (Minn. 2005); *see Blakely v. Washington*, 542 U.S. 296, 301, 124 S. Ct. 2531, 2536 (2004) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proven beyond a reasonable doubt." (quotation omitted)). Minn. Stat. § 609.1095, subd. 4 (2014), authorizes increased sentences for offenders when the crime for which the sentence is imposed is a felony and the jury determines "that the offender has five or more prior felony convictions" and "that the present offense is a felony that was committed as part of a pattern of criminal conduct."

The "determination of a pattern of criminal conduct under Minn. Stat. § 609.1095 goes beyond solely the fact of a prior conviction." *State v. Henderson*, 706 N.W.2d 758, 762 (Minn. 2005). "A 'pattern of criminal conduct' is established upon 'proof of criminal conduct similar, but not identical, in motive, purpose, results, participants, victims or other shared characteristics.'" *State v. Outlaw*, 748 N.W.2d 349, 357 (Minn. App. 2008)

14

(quoting *State v. Gorman*, 546 N.W.2d 5, 9 (Minn. 1996)), *review denied* (Minn. July 15, 2008).

The investigating officer testified that Mason was convicted of motor-vehicle theft in 2002; motor-vehicle theft, second-degree burglary, and theft of over $500 in 2003;[1] motor-vehicle theft in 2005; motor-vehicle theft in 2006; motor-vehicle theft in 2007; motor-vehicle theft in 2010; and drug possession in 2014. The prosecutor asked the officer "during your years of experience and doing investigations, do you see a pattern or a connection between all of these offenses?" The officer replied, "[I] [s]ee a continual and escalated pattern starting with numerous thefts, leading to drugs, and now theft of drugs with firearms, a continual escalated pattern."

We do not determine whether the district court plainly erred by allowing this testimony because it is not reasonably likely that the alleged error significantly affected Mason's substantial rights. The officer's testimony was not necessary to establish that the first-degree aggravated robbery in this case and Mason's prior convictions were similar in terms of motive, purpose, and results. Mason's prior felony convictions were for conduct involving thefts or drugs. The relevant crime in this case is a robbery involving drugs. Under the circumstances, we have little reason to believe that the jury's finding of a pattern of criminal conduct depended on the officer's unobjected-to opinion. Because there is overwhelming evidence that the first-degree aggravated robbery in this case is part of a pattern of criminal conduct—regardless of the officer's opinion testimony—the district

---

[1] Mason was convicted of motor-vehicle theft twice in 2003.

15

court did not commit plain error affecting Mason's substantial rights by failing to strike the testimony sua sponte. Mason is therefore not entitled to sentencing relief under the plain-error standard.

## IV.

Mason argues that his "conviction for ineligible person in possession of a firearm should be reversed because [he] possessed a BB gun, which is not a firearm as a matter of law" under Minn. Stat. § 624.713, subd. 1(2). After briefing and before oral argument in this case, the Minnesota Supreme Court decided *State v. Haywood*, 886 N.W.2d 485, 486, (Minn. 2016), which held that "[u]nder Minn. Stat. § 609.165 (2014), the plain meaning of the word 'firearm' does not include an air-powered BB gun." At oral argument to this court, the state agreed that Mason's conviction should be reversed under *Haywood*.

After oral argument, this court decided *State v. Yang*, ___ N.W.2d ___, ___, 2016 WL 6670680, at *1 (Minn. App. Nov. 14, 2016), which held that "[a] BB gun that is powered by compressed air is not a 'firearm,' as that term is used in section 624.713, subdivision 1, of the Minnesota Statutes." Based on this court's holding in *Yang*, we reverse Mason's conviction of possession of a firearm by a prohibited person under Minn. Stat. § 624.713, subd. 1(2), and vacate the judgment of conviction.

## V.

In a supplemental pro se brief, Mason makes several additional claims of error, including that he was denied effective assistance of counsel, the prosecutor committed misconduct, the district court committed judicial misconduct, the state withheld exculpatory evidence, he was denied the equal protection of the law, and the district court

16

deprived him of his rights under the color of law. We have carefully reviewed all of Mason's pro se claims and conclude that they are without merit. *See, e.g.*, *Ture v. State*, 681 N.W.2d 9, 20 (Minn. 2004) (rejecting pro se arguments without detailing consideration of each argument).

**Affirmed in part and reversed in part.**