*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-0102**

State of Minnesota,
Respondent,

vs.

Antonio Dirrell Hugh,
Appellant.

**Filed June 17, 2024
Affirmed
Gaïtas, Judge**

Ramsey County District Court
File No. 62-CR-22-2634

Keith Ellison, Attorney General, St. Paul, Minnesota; and

John Choi, Ramsey County Attorney, Peter R. Marker, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Greg Scanlan, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Connolly, Presiding Judge; Gaïtas, Judge; and Larson, Judge.

**NONPRECEDENTIAL OPINION**

**GAÏTAS**, Judge

Appellant Antonio Dirrell Hugh challenges his conviction, following a jury trial, for unlawful possession of a firearm. He argues that respondent State of Minnesota failed to satisfy its burden of proving his guilt at trial because the evidence that he possessed a gun

was entirely circumstantial and consistent with his innocence. We conclude that the trial evidence was sufficient to establish Hugh's guilt beyond a reasonable doubt, and we affirm.

**FACTS**

In April 2022, police responded to an apartment building in St. Paul after receiving reports of gunfire. They found Hugh, who had been shot in the shoulder, sitting on the front steps of the building. Hugh was transported to the hospital, and the police investigated the shooting. Based on their investigation, the police believed that Hugh—who was prohibited from possessing firearms or ammunition—had fired a gun during the incident, although the gun was never recovered. Hugh was charged with two crimes: unlawful possession of a firearm and unlawful possession of ammunition. He pleaded not guilty to the offenses and requested a jury trial.

At trial, Hugh stipulated that he had a prior conviction for a crime of violence that made him ineligible to possess a firearm or ammunition. The state's evidence focused on whether Hugh possessed a firearm and ammunition.

The shooting was largely captured on video by cameras located outside of two apartment buildings, including the building where police and emergency workers discovered Hugh. While the videos were played for the jury, a police sergeant explained his interpretation of the events depicted. According to the sergeant, two individuals approached Hugh, and at least one of those people fired a gun at Hugh. The sergeant testified that Hugh then returned fire, explaining to the jury that the video showed muzzle flashes coming from a handgun that Hugh pointed toward the approaching people. Using still images from the video, the sergeant identified a "glint" coming from Hugh's gun and

2

puffs of smoke emanating from the gun after shots were fired. Although the sergeant acknowledged that no witnesses observed Hugh firing a gun, no gun was recovered, and there was no DNA or fingerprint evidence connecting Hugh to a gun, he testified that the surveillance videos and other physical evidence showed that Hugh possessed a gun and ammunition.

Three police officers who responded to the shooting testified about the physical evidence. One officer testified that he found a total of 18 expended shell casings in the street—ten .40-caliber casings and eight .45-caliber casings. Given the different calibers of the casings, the officer opined that there were two guns—and probably two shooters— involved in the incident. However, the officer acknowledged that he could not determine from the casings alone how many guns had been fired. Additionally, he could not confirm that all the casings were discharged during the incident involving Hugh.

A second officer testified about his search of the area where Hugh was positioned during the incident. He found five .40-caliber casings in the general vicinity. The officer testified that this type of casing generally is ejected within a four-foot diameter of the location where the shooter pulled the trigger. However, the officer explained that casings can be "kicked around or moved around quite easily."

Finally, a third officer described his efforts to locate a gun at the scene of the shooting. He testified that, based on the surveillance videos, police suspected that Hugh discarded his gun in a parked white car. The surveillance videos show Hugh approaching a parked car, opening the car door, and then closing the car door. Although the officer

3

arranged to have the white car towed, a tow truck removed a different white car from the scene. Thus, the gun was never found.

Following the state's presentation of evidence, Hugh moved for a judgment of acquittal,[1] arguing that the evidence did not foreclose the reasonable possibility that he possessed a BB gun rather than a firearm. The district court denied the motion. After this ruling, Hugh rested, and the two charges were submitted to the jury.

The jury found Hugh guilty of both unlawful possession of a firearm and unlawful possession of ammunition. At sentencing, the district court entered a conviction for unlawful possession of a firearm and sentenced Hugh to the mandatory minimum prison-term of 60 months.[2]

Hugh appeals.

## DECISION

Hugh argues that the trial evidence was insufficient to prove his guilt beyond a reasonable doubt. In a criminal case, due process requires the prosecution to prove every element of the charged crime beyond a reasonable doubt. *State v. Culver*, 941 N.W.2d 134, 142 (Minn. 2020). To convict Hugh of unlawful possession of a firearm, the state was required to prove beyond a reasonable doubt that he was ineligible to possess a firearm

---

[1] Under the Minnesota Rules of Criminal Procedure, a defendant may move for a judgment of acquittal at the close of evidence for either party "if the evidence is insufficient to sustain a conviction." Minn. R. Crim. P. 26.03, subd. 18(1)(a).

[2] The district court did not enter an adjudication for the offense of unlawful possession of ammunition.

because he had been convicted of a "crime of violence" and that he possessed a firearm. *See* Minn. Stat. § 624.713, subd. 1(2) (2020).

At trial, Hugh stipulated that he had been convicted of a crime of violence. And Hugh's brief to this court states that he does not challenge the sufficiency of the evidence underlying "the 'possession' element" of the offense. Hugh's sole challenge on appeal is whether the state proved beyond a reasonable doubt that the object he possessed—as seen in the surveillance videos introduced at trial—was a firearm. He contends that, based on the state's evidence, it is equally possible that he possessed a BB gun, which is not a firearm. *See State v. Haywood*, 886 N.W.2d 485, 490 (Minn. 2016) (stating "the plain and ordinary meaning of the word 'firearm' includes only devices that require explosive force," such that an "air-powered BB gun is not a firearm"). Thus, according to Hugh, his conviction for unlawful possession of a firearm must be reversed for insufficient evidence.

Before considering Hugh's argument, we identify our standard of review. "To determine whether sufficient evidence exists to support a jury verdict, [appellate courts] view the evidence in a light most favorable to the verdict and assume the fact-finder disbelieved any testimony conflicting with that verdict." *State v. Balandin*, 944 N.W.2d 204, 213 (Minn. 2020) (quotation omitted). An appellate court will not disturb a verdict "[i]f the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably have concluded that the defendant was guilty of the charged offense." *State v. Thomas*, 890 N.W.2d 413, 420 (Minn. App. 2017), *rev. denied* (Minn. Mar. 28, 2017).

5

We apply a heightened standard of review when the state's evidence on one or more elements of a charged offense consists solely of circumstantial evidence. *State v. Porte*, 832 N.W.2d 303, 309 (Minn. App. 2013). Circumstantial evidence is "evidence from which the factfinder can infer whether the facts in dispute existed or did not exist." *State v. Harris*, 895 N.W.2d 592, 599 (Minn. 2017) (quotation omitted). Here, the state concedes, and we agree, that the evidence proving that Hugh possessed a firearm was purely circumstantial.

When reviewing the sufficiency of circumstantial evidence, an appellate court uses a two-step analysis. *State v. Moore*, 846 N.W.2d 83, 88 (Minn. 2014). The first step in evaluating the sufficiency of circumstantial evidence is to identify the "circumstances proved" by the state at trial. *State v. Andersen*, 784 N.W.2d 320, 329 (Minn. 2010). A reviewing court assumes the trier of fact believed the state's witnesses and rejected all evidence contrary to the verdict; all conflicting evidence is resolved in the state's favor. *State v. Tscheu*, 758 N.W.2d 849, 858 (Minn. 2008). After identifying the circumstances proved, the reviewing court next determines whether those circumstances are "consistent with guilt and inconsistent with any rational hypothesis except that of guilt." *State v. Silvernail*, 831 N.W.2d 594, 599 (Minn. 2013) (quotations omitted). At this step of the analysis, unlike the first step, appellate courts do not defer to the fact-finder's choice among reasonable inferences. *State v. Al-Naseer*, 788 N.W.2d 469, 474 (Minn. 2010). If the circumstances proved are consistent with a reasonable inference other than guilt, the evidence is insufficient, and the resulting conviction must be reversed. *See Harris*, 895 N.W.2d at 603.

Viewing the evidence in the light most favorable to the verdict, the circumstances proved here are as follows. Two people walked toward Hugh, and at least one of those people fired a gun at Hugh. Initially, Hugh ducked behind a parked car. But then he stood next to the car, pointed a gun in the direction of the two people, and fired it. Surveillance video shows muzzle flashes around the gun and puffs of smoke emitting from the gun. While aiming the gun, Hugh was standing in a grassy area between the sidewalk and the street. Then, he approached a parked car, opened the car door, and closed the door. Police later towed a different car, which did not contain the gun. Officers collected 18 discharged bullet casings after the shooting, and they found five .40-caliber casings in the general vicinity of where Hugh shot his gun. No guns were recovered, but Hugh was shot in the shoulder during the incident.

Turning to the second step of our standard of view, we next "determine whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt, not simply whether the inferences that point to guilt are reasonable." *Silvernail*, 831 N.W.2d at 599 (quotations omitted).

Hugh acknowledges that the circumstances proved support a reasonable hypothesis that he possessed a firearm. But he argues that the circumstances proved at trial do not foreclose a reasonable hypothesis that the weapon was a BB gun.

We disagree. Although this is an unusual case in that no firearm was recovered, the circumstances proved are only consistent with one reasonable hypothesis—that the weapon in Hugh's hand was a firearm.

The circumstances proved do not support Hugh's hypothesis that the item he possessed was a BB gun. Most significantly, there were discharged casings in the area where Hugh was positioned when he pointed and fired the gun. This evidence is inconsistent with Hugh's alternative hypothesis. Hugh suggests that the casings were not in the exact spot where he stood when firing the gun. He also highlights testimony that "shots fired" calls are common in the neighborhood and the casings "could have come from an earlier shooting." But evidence that is inconsistent with the jury's guilty verdict is not included in the circumstances proved. *See Tscheu*, 758 N.W.2d at 858 (stating that the appellate court must assume that the factfinder rejected all evidence contrary to the verdict and that all conflicting evidence was resolved in the state's favor).

Hugh notes that the police sergeant testified that he did not know whether muzzle flashes occur when an "airgun" is fired. He argues that this evidence supports his alternative hypothesis that the gun was a BB gun. But again, this evidence, which is inconsistent with the guilty verdict, is not a circumstance proved for the purpose of our standard of review.

Finally, Hugh argues that it is reasonable to conclude that he had a BB gun based on the police sergeant's testimony that people sometimes carry replica guns—which may resemble firearms—for "[i]ntimidation" or "threats." However, Hugh points to no evidence in the record to support his theory that the gun *he* possessed was a BB gun. To support a reasonable hypothesis of innocence, an appellant may not rely on mere conjecture or speculation but must point to specific evidence in the record that is consistent with innocence. *Al-Naseer*, 788 N.W.2d at 480; *see also Tscheu*, 758 N.W.2d at 858; *State v.*

*Ostrem*, 535 N.W.2d 916, 923 (Minn. 1995) (noting that, for an inference to be rational, the appellant must point to evidence in the record that is consistent with a theory other than guilt).

The circumstances proved are only consistent with Hugh's guilt. They establish that Hugh possessed a firearm and not some other implement, such as a BB gun. Accordingly, we conclude that the trial evidence was sufficient to support Hugh's conviction for unlawful possession of a firearm.[3]

**Affirmed.**

---

[3] Because the district court did not enter a conviction for the offense of unlawful possession of ammunition, the only judgment appealed to this court is Hugh's conviction for unlawful possession of a firearm. But in his brief to this court, Hugh also challenges the evidence underlying the jury's guilty verdict for unlawful possession of ammunition. Although the verdict for that offense did not result in a judgment, we note that our analysis as to that offense would be the same as our analysis of the sufficiency of the evidence underlying Hugh's firearm conviction.